In re R.T. CRYSTIAN, Jr., Debtor.

MELLON BANK, N.A., Movant,

v.

R.T. CRYSTIAN, Jr., Respondent.

Bankruptcy No. 95–23157 JKF.

United States Bankruptcy Court,
W.D. Pennsylvania.

July 9, 1996.

Gary W. Short, Pittsburgh, PA, for Debtor.

James F. Grenen, O'Keefe, Grenen & Birsic, P.C., Pittsburgh, PA, for Mellon Bank, N.A.

## MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matter before the court is Debtor's Motion for New Trial and/or to Alter Judg-

1. This Opinion constitutes this court's findings of fact and conclusions of law. The court's juris- diction was not at issue.

ment. By Memorandum Opinion and Order dated May 9, 1996, we sustained Mellon Bank's objection to confirmation of Debtor's chapter 11 plan. After a hearing on the Motion for New Trial, we entered an order on June 20, 1996, withdrawing the Opinion and Order of May 9, 1996. We are asked to examine the applicability of 11 U.S.C. § 1123(b)(5) to the Bank's secured claim and to determine whether the mortgage is modifiable. We conclude that it is modifiable in that it is secured by security interests in property other than Debtor's principal residence. The following explains our conclusion.[2]

Mellon Bank, N.A. (hereafter "the Bank"), objected to confirmation of Debtor's chapter 11 plan because the plan seeks to modify the Bank's first position mortgage on the ground that the mortgage includes collateral other than real property that is Debtor's primary residence. Section 1123(b)(5) of title 11 of the Bankruptcy Code provides that a plan may

> modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims ...

11 U.S.C. § 1123(b)(5). This section was added to the Bankruptcy Code by the Bankruptcy Reform Act of 1994 which is applicable to this case.[3] There are no reported chapter 11 cases construing this section.[4] The statute provides that, unless the Bank's claim is secured by more than just an inter-

est in Debtor's principal residence, it cannot be modified. We conclude that § 1123(b)(5) does not prevent modification of the Bank's secured claim and the claim can be modified under § 1123(a)(5)(E), if the modification is fair and equitable under § 1129(b)(2). To determine the latter, an evidentiary hearing is necessary.

## I. *APPLICABILITY OF § 1123(b)(5)*

■ Debtor contends that the mortgage is modifiable under § 1123(b)(5) because the mortgage includes references to hazard insurance proceeds, the tax and insurance escrow, and condemnation proceeds. These items, however, are included in covenants within the mortgage and are not part of the conveyance clause. The conveyance clause grants a security interest in "all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property". *See* Debtor's Brief in Support of Confirmation of Plan of Reorganization at 2; Debtor's Affidavit in Support of Confirmation of Plan of Reorganization at Exhibit 2 (the mortgage) (hereafter Affidavit Exhibit 2).[5] The security interest in easements, rights, etc., is an interest in realty under Pennsylvania law.

> "For what is land but the profits thereof for thereby vesture, herbage, trees, mines, and all whatever parcel of the land doth pass." It is presumed that a devise of the rents, issues and profits of the land, without qualification or duration of time, passes the fee.

2. We have scheduled an evidentiary hearing on the issue of whether Debtor's proposed plan treatment of the Bank is fair and equitable and whether the plan is feasible.

3. The effective date is also the date of enactment. P.L. 103–394, § 702, 108 Stat. 4106. Section 702 of the Bankruptcy Reform Act of 1994 provides that

> (b) APPLICATION OF AMENDMENTS.—(1) Except as provided in paragraph (2), the amendments made by this Act shall not apply with respect to cases commenced under title 11 of the United States Code before the date of the enactment of this Act.

The only reference to § 1123 is to § 1123(d) of the Code (§ 305 of the 1994 amendments) and

provides that the amendments apply only to agreements entered into after the effective date. Section 1123(d) is not at issue in this case. *See* § 702(b)(2)(D).

4. As amended, § 1123(b)(5) is mentioned in two chapter 13 cases. *See Lomas Mortgage, Inc. v. Louis*, 82 F.3d 1 (1st Cir.1996) (detailing legislative history in situation where debtor's residence was one unit of multi-unit dwelling); *In re Dingley*, 189 B.R. 264 (Bankr.N.D.N.Y.1995) (claim protected from cramdown or modification is one secured only by debtor's principal residence).

5. Affidavit Exhibit 1 is the original mortgage executed in 1985. The 1986 mortgage appears in Affidavit Exhibit 2.

*In re Carmany's Estate,* 357 Pa. 296, 302–03, 53 A.2d 731, 734 (1947) (citations omitted). *See also Shearer v. Miller,* 185 Pa. 149, 39 A. 846 (1898) (rents, issues, and profits described as conveying the right to lease or release the land, to cut off the wood for repairs, firewood, posts, rails, etc., to sell the wood from the woodland when fit to cut). *See also* prior opinions we issued regarding rents, issues and profits clauses under Pennsylvania law in chapter 13 cases: *In re Wilkinson,* 189 B.R. 327 (Bankr.E.D.Pa.1995) (addressing "rents, issues and profits"); *In re Brown,* 189 B.R. 3 (Bankr.E.D.Pa.1995) (addressing unaccrued rents).

The other items challenged appear in covenants and are not part of the security interest granted to the Bank in the conveyance clause. *See* Affidavit Exhibit 2. Furthermore, the mortgage does not purport to convey a security interest in any of the other items except the escrow account.

A covenant is defined as

> [a]n agreement, convention, or promise of two or more parties, by deed in writing, signed, and delivered, by which either of the parties pledges himself to the other that something is either done, or shall be done, or shall not be done, or stipulates for the truth of certain facts.

BLACK'S LAW DICTIONARY 363 (6th ed. 1990).

### (i) CONDEMNATION PROCEEDS

■ The condemnation proceeds are the subject of a covenant and are assigned to the Bank. The covenant does not purport to grant the Bank a security interest in the condemnation proceeds. Affidavit Exhibit 2 at ¶ 9. In Pennsylvania, upon condemnation, a lien is divested from the land but attaches by operation of law to the fund. *Briegel v. Briegel,* 307 Pa. 93, 98, 160 A. 581, 583 (1931). Although the mortgagor's claim to the fund is personalty, *id.* at 99, 160 A. at 583; *see also Fidelity–Philadelphia Trust Co. v. Kraus,* 325 Pa. 581, 583, 190 A. 874, 875 (1937), the lien of the mortgage attaches to the fund. Any disbursement to the Bank

from condemnation proceeds would occur by operation of state law in the event of condemnation proceedings. Thus, the assignment of the proceeds in the mortgage covenant does not constitute additional security which allows Debtor to modify the mortgage under § 1123(b)(5). *See also In re Halperin,* 170 B.R. 500 (Bankr.D.Conn.1994) (condemnation proceeds are not additional security).

### (ii) HAZARD INSURANCE

■ Similarly, the requirement that Debtor maintain hazard insurance is the subject of a covenant that does not purport to give the Bank a security interest in the insurance proceeds. Affidavit Exhibit 2 at ¶ 5. The covenant merely requires Debtor to maintain insurance and name the Bank as loss payee. *Id.* ("All insurance policies and renewals ... shall include a standard mortgage clause").[6] Some cases hold that hazard insurance proceeds or policies are additional security. *See, e.g., In re Selman,* 120 B.R. 576 (Bankr. D.N.Mex.1990) (credit life and hazard insurance policies); *In re Klein,* 106 B.R. 396 (Bankr.E.D.Pa.1989) (hazard insurance proceeds).

We find, however, that the better reasoned cases hold that hazard insurance does not constitute additional security. For example, in *In re Davis,* 989 F.2d 208 (6th Cir.1993), a chapter 13 case, the deed of trust required the debtor to maintain hazard insurance with the mortgagee named as loss payee. The court first examined cases dealing with credit life and disability insurance, noting that the trend is "toward a consensus that credit life and disability insurance does not constitute additional security." 989 F.2d at 211, quoting *Matter of Washington,* 967 F.2d 173, 174 (5th Cir.1992). The court decided that the argument that hazard insurance was not additional security was compelling. "[H]azard insurance is merely a contingent interest—an interest that is irrelevant until the occurrence of some triggering event and not an additional security interest for purposes of

---

**6.** The clause provides that, absent written agreement to the contrary, proceeds will be applied to restoration or repair of the property, if economically feasible and the Bank's security is not less-

ened. If restoration or repair is not economically feasible or the Bank's security is lessened, proceeds of the insurance will be applied to the balance due to the Bank under the mortgage.

§ 1322(b)(2)." *In re Davis,* 989 F.2d at 211. The court noted that

> To hold that this type [hazard] insurance coverage constitutes an additional security interest would completely eviscerate the protective exception for residential lenders found in Section 1322(b)(2). Congress would not have enacted a meaningless statute, knowing that practically all of the lenders for whom the protective exception was intended, would be eliminated from the protection solely because they routinely require fire and casualty insurance.

*Id.,* quoting *In re Braylock,* 120 B.R. 61, 63 (Bankr.N.D.Miss.1990). The court mentioned that most cases holding that insurance is additional security dealt with credit life and disability. Hazard insurance is "an essential protection of the underlying collateral and not ... *additional* collateral". *In re Davis,* 989 F.2d at 212 (emphasis in original).

*In re Spano,* 161 B.R. 880 (Bankr.D.Conn. 1993), also held that a mortgage requiring the borrower to maintain hazard insurance for the lender's benefit was protected by § 1322(b)(2). The court noted that hazard insurance proceeds have no existence independently from the property. Similarly, the requirement to maintain hazard insurance creates no additional security. The sole reason for hazard insurance is to cover loss or damage to the real property. *Spano* also concluded that

> [h]azard insurance proceeds are similar to proceeds from the condemnation of the mortgaged property, on which proceeds the mortgagee generally has a lien to secure its debt.... Just as rents are the money equivalent of the *possessory* stick from the bundle of rights that is the real property, so hazard insurance proceeds are the money equivalent of the *improvements* (i.e. bricks and mortar) stick from that bundle.

161 B.R. at 890 (emphasis in original). Hazard insurance is an element of adequate protection of the collateral and is not additional security. *Id.,* citing *In re Davis, supra.* Because § 1123(b)(5) is identical to

§ 1322(b)(2), we reach the same result as did the courts in *Davis* and *Spano.*

### (iii) *ESCROW*

■ The escrow funds require a different analysis in that, in this mortgage, they "are pledged as additional security for the sums secured by this Security Instrument". Affidavit Exhibit 2 at ¶ 2. The Court of Appeals for the Third Circuit has referred three times to "escrow" in the context of modification of mortgages in chapter 13 cases. *See In re Hammond,* 27 F.3d 52 (3d Cir.1994) (rehearing and suggestion for rehearing en banc denied); *Sapos v. Provident Institution of Savings,* 967 F.2d 918 (3d Cir.1992); *Wilson v. Commonwealth Mortgage Corporation,* 895 F.2d 123 (3d Cir.1990). In dicta in *Hammond* the court of appeals said

> creditors who demand additional security interests in personalty or escrow accounts and the like pay a price. Their claims become subject to modification. Their recourse, if they wish to avoid modification, is to forego the additional security.

27 F.3d at 57, referring to its opinion in *Wilson, supra.* However, the escrow was not at issue in *Hammond, Sapos,* or *Wilson* and the reference to escrow appears to have been added without separate discussion.[7] Nonetheless, we are constrained to follow the dicta in *Hammond* and find that the security interest in escrow funds contained in this mortgage is additional security.

### II. *CHECKING ACCOUNT AGREEMENT*

■ Debtor also contends that the terms of his checking account agreement provide the Bank with additional security on its claim. The checking account was opened in July of 1979, approximately 7½ years *before* the 1986 mortgage. The checking account agreement provides in part:

> Security interest—Unless your account is a Retirement Savings Money Market, you hereby grant us a security interest upon any balance in this account to secure the payment of any debt that you, or any one

---

**7.** The *Wilson* and *Hammond* mortgages included appliances, machinery, furniture and equipment. The issue in *Sapos* was cure of arrearages through the chapter 13 plan and the mortgage included a security interest in appliances and wall-to-wall carpeting.

of you, may owe us, whether direct or indirect, and whether due or to become due and you agree that we have the right to offset any such balance against any such debt.

Affidavit Exhibit 7 at page 4. According to the terms of the checking account agreement, any claim the Bank would ever acquire against Debtor would become secured by the proceeds in the account. The Bank acquired the claim at issue in real property that is the Debtor's principal residence after the checking account was opened.

Section 1123(b)(5) does not specify that the "claim secured only by a security interest in real property that is the debtor's principal residence" is limited to a claim arising only under the note and mortgage that created the lien against Debtor's home. Accordingly, because the statutory language is not restrictive, we conclude that the claim is not limited to that created by the note and mortgage. Thus, the checking account is additional security and the Bank's claim can be modified if the modification proposed by Debtor in the plan meets the appropriate standards for confirmation. *Cf., Horbal v. Moxham Nat'l Bank*, 441 Pa.Super. 463, 657 A.2d 1261 (1995), *alloc. denied,* —— Pa. ——, 674 A.2d 1073 (1996) (certificate of deposit assigned to secure antecedent debt also secured by mortgage was Bank's collateral and, on default, was subject to Bank's application of proceeds to balance owed without compliance with Pennsylvania Deficiency Judgment Act). This matter will be resolved by the evidentiary hearing already scheduled.