In re Corey SHANDREW, Debtor.

Bankruptcy No. 96–94764.
Motion Control No. BJD–1.

United States Bankruptcy Court,
E.D. California,
Modesto Division.

June 2, 1997.

Michael H. Meyer, Modesto, CA, for Chapter 13 Trustee.

Bradford J. Dozier, Atherton & Dozier, Stockton, CA, for debtor.

## AMENDED MEMORANDUM DECISION

MICHAEL S. McMANUS, Bankruptcy Judge.

### I.   Facts

In this chapter 13 case the debtor seeks confirmation of a plan which treats Household Finance Corporation's (HFC) secured claim as if it were unsecured. HFC holds a claim secured by a deed of trust which encumbers real property which is the debtor's residence.[1] The residence has a value of $85,000 and is also encumbered by a senior deed of trust which secures the $90,000 claim of Countrywide Home Loans, Inc.

HFC has made no appearance in the case other than to file a timely proof of claim. Its proof of claim asserts a claim of $11,553.01 secured by a perfected deed of trust encumbering the debtor's residence.

The proposed plan will pay nothing to unsecured creditors. Therefore, if the plan is confirmed, HFC will effectively lose its security and it will be paid nothing on account of its claim.

### II.   Discussion

The chapter 13 trustee has objected to confirmation of the plan on the ground that *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), prohibits the "strip down" of HFC's security interest. The trustee has standing to raise the objection even though HFC has said nothing. *Andrews v. Loheit (In re Andrews),* 49 F.3d 1404, 1406–1407 (9th Cir. 1995).

Resolution of this objection requires the court to consider the interplay between sections 506(a) and 1322(b)(2) of the Bankruptcy Code. 11 U.S.C. §§ 506(a) and 1322(b)(2). In *Nobelman* the Supreme Court determined that section 1322(b)(2) trumps section 506(a) and prohibits the strip down of an undersecured home mortgage.[2] Is the same true if, after deducting the amount of all senior liens from the value of the home, there is no value in the home for a junior deed of trust?

### A.

Section 506(a) defines a secured claim as follows:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a). In other words, section 506(a) bifurcates a nominally secured claim into its secured and unsecured components according to the value of its security.

Were the analysis to stop here, HFC would be considered the holder of a completely unsecured claim because the debtor's home has no value above Countrywide's senior lien.

### B.

But an analysis based only on section 506(a) is incomplete. Section 1322(b)(2) provides:

> (b) [T]he plan may—. . . (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence. . . .

11 U.S.C. § 1322(b)(2). Section 1322(b)(2), then, prohibits confirmation of a chapter 13 plan which prospectively modifies a home mortgage.

---

1. Based on the fact that the debtor executed the senior deed of trust in favor of Countrywide Home Loans, Inc., on September 13, 1994, and the deed of trust to HFC on April 8, 1996, it appears that the HFC loan was not used to purchase the debtor's home at 754 Sullivan Way, Stockton, California. *See* Proof of Claim filed by Countrywide Home Loans, Inc., on February 10, 1997, and Proof of Claim filed by HFC on January 22, 1997.

2. Throughout this decision, the phrase "home mortgage" refers to a claim secured by a security interest in real property that is the debtor's principal residence. It also refers to both a mortgage and a deed of trust even though under California law these two security devices have different characteristics. *See* Harry D. Miller & Marvin B. Starr, *Current Law of California Real Estate,* § 9.2, p. 8–12 (2d ed.1989).

In *Nobelman,* the Supreme Court held that section 1322(b)(2) prohibited the debtor from using section 506(a) to reduce an undersecured home mortgage of $71,335 to the value of the debtor's home, $23,500.

Here, unlike *Nobelman* where the secured creditor had at least a partially secured claim after application of section 506(a), section 506(a) renders HFC's claim completely unsecured. The debtor argues that the absence of a "secured claim" prevents section 1322(b)(2) from coming into play. Put differently, the "anti-modification portion" of section 1322(b)(2) (a claim secured only by a security interest in real property that is the debtor's principal residence [may not be modified]) has no applicability because the preambular language of section 1322(b)(2) ("the plan may … modify rights of holders of secured claims …") assumes a secured claim as determined by section 506(a). This is the so-called "rule of the last antecedent" discussed and rejected in *Nobelman. Nobelman v. American Savings Bank,* 508 U.S. at 330, 113 S.Ct. at 2111, 124 L.Ed.2d at 236.

This argument has found favor in several courts. *See e.g., In re Plouffe,* 157 B.R. 198, 200 (Bankr.D.Conn.1993); *In re Hornes,* 160 B.R. 709, 711 (Bankr.D.Conn.1993); *In re Sanders,* 202 B.R. 986, 988–989 (Bankr. D.Neb.1996) (cases collected).

Other courts have refused to strip down a home mortgage even though there is no equity in the home. *See e.g., Neverla,* 194 B.R. 547 (Bankr.W.D.N.Y.1996); *In re Jones,* 201 B.R. 371 (Bankr.D.N.J.1996); *In re Barnes,* 199 B.R. 256 (Bankr.W.D.N.Y.1996); *In re Barnes,* 207 B.R. 588 (Bankr.N.D.Ill.1997). This court believes that the latter line of cases is better reasoned and holds that section 1322(b)(2) as interpreted in *Nobelman* prohibits the use of section 506(a) to strip down a home mortgage even if there is no equity in the home.

In *Nobelman,* the Supreme Court acknowledged that it was appropriate to resort to section 506(a) "for a judicial valuation of the collateral to determine the status of the bank's secured claim." [3] *Nobelman v. American Savings Bank,* 508 U.S. at 328, 113 S.Ct. at 2110, 124 L.Ed.2d at 234–235. But the "rights" of holders of claims secured by the debtor's home are protected by section 1322(b)(2) and those rights may not be limited by the collateral's valuation under section 506(a). *Id.* at 328, 113 S.Ct. at 2110, 124 L.Ed.2d at 235. "[I]t is the existence of a [home] mortgage lien which determines the applicability of § 1322(b)(2), and not the value of the collateral subject to that lien." *In re Jones,* 201 B.R. at 371.

The anti-modification clause within section 1322(b)(2) does not use the term "secured claim," but instead refers to a "claim secured … by" the debtor's home. In *Nobelman,* the court found the former is determined by application of section 506(a). The latter, however, refers "to the lienholder's entire claim, including both secured and unsecured components of the claim." *Nobelman v. American Savings Bank,* 508 U.S. at 331, 113 S.Ct. at 2111, 124 L.Ed. at 236. The latter is not defined or limited by section 506(a) but by applicable state law and the underlying security documents. *Id.* at 328, 113 S.Ct. at 2110, 124 L.Ed.2d at 235.

In California, a creditor secured by the home of its defaulting debtor may, at a minimum, conduct a nonjudicial foreclosure sale. Cal. Civ.Code §§ 2924 *et seq.* At that sale, the creditor may credit bid all or a portion of its debt and may thereby acquire the home subject to any senior liens, barring a higher cash bid. Cal. Civ.Code § 2924h(b). The creditor's right to conduct a nonjudicial foreclose is not limited by the value of the home

---

**3.** At oral argument, counsel for the debtor argued that this portion of Justice Thomas' opinion in *Nobelman* would have no meaning if it is not construed as an invitation to use section 506(a) to strip down a deed of trust which is supported by no equity in a debtor's home. There are other reasons to employ section 506(a). It may be used to determine whether, prior to plan confirmation, a secured creditor is entitled to adequate protection. In *United Savings Association v.* *Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), the Supreme Court held that section 506(a) must be applied to determine if a creditor was oversecured and therefore entitled to post-petition, preconfirmation interest as adequate protection. Also, collateral must be valued under section 506(a) to determine if certain fees and costs may be added to the secured claim. 11 U.S.C. § 506(b).

or a lack of equity in it. In the words of Judge Lundin:

> Under the law of most states, even a mortgage holder with little or no 'value' in the collateral to support its debt has a 'right' to foreclose its lien and sell the property ... *Nobelman* seems to protect even the right of an 'unsecured' mortgage holder to exercise all its 'rights' under the mortgage contract and under state law.

Keith M. Lundin, *Chapter 13 Bankruptcy,* § 4.46, p. 4–56 to 4–57 (2d ed.).

*Nobelman* does not permit the debtor to confirm a plan which modifies HFC's claim based upon the valuation of the home under section 506(a). It makes no grammatical or logical sense to permit invocation of the "rule of the last antecedent" or to vary the meaning of "claim secured ... by" in order to change the reach of section 1322(b)(2) depending on the value of the debtor's home in relation to the liens encumbering it.

To hold otherwise will lead to arbitrary results. For example, if the amount of the Countrywide's senior lien was $84,999, *Nobelman* dictates that HFC's lien be treated as a fully secured claim because it is supported by one dollar of equity in the home. But, if the debtor's gloss on *Nobelman* is correct, and value slips one cent below the amount of the senior lien, HFC's junior lien is eliminated entirely. *In re Barnes,* 199 B.R. at 257. This court cannot ascribe:

> to Congress the odd intent to extend the antimodification protection in § 1322(b)(2) to residential mortgage holders with any toehold on the debtor's property and to refuse that same protection where collateral values have shifted a peppercorn below the creditor's position. The lien rights of either creditor under state law ... are typically the same whether the mortgage holder is dollar above or a dollar below the allowed secured claim threshold. This reading of *Nobelman* puts an undeserved premium on valuation of residential real property—it assumes a degree of accuracy in the valuation process that is without foundation in reality.

Keith M. Lundin, *Chapter 13 Bankruptcy,* § 4.46, p. 220 (2d ed. 1996 Supp.).

Further, to withhold the protection of section 1322(b)(2) from home mortgages unsupported by equity in a debtor's home would give a debtor an incentive to inflate senior liens by non-payment and then file a chapter 13 petition when the senior lien exceeds the home's value. "This might be considered to be abusive pre-bankruptcy planning by some, but perfectly permissible by others. However, it would clearly not further the underlying Congressional intent of encouraging the flow of capital into the home lending market." *In re Neverla,* 194 B.R. at 551–552.

### C.

A few courts have permitted a home mortgage encumbering a chapter 13 debtor's home and not supported by any equity to be stripped off the home by importing section 506(d) into their analysis. 11 U.S.C. § 506(d). For example, in *In re Geyer,* 203 B.R. 726 (Bankr.S.D.Cal.1996), the bankruptcy court permitted the chapter 13 debtors to avoid a lien on their home because the home mortgage was completely unsecured after application of section 506(a). This interpretation of section 506(d) was rejected by the Supreme Court in *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

Section 506(d) provides that "[t]o the extent a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void...." In *Dewsnup v. Timm* the Supreme Court held that the phrase "allowed secured claim" in section 506(d) is not a reference to the secured portion of claim that has been bifurcated into secured and unsecured components by application of section 506(a). *Dewsnup v. Timm,* 502 U.S. at 417, 112 S.Ct. at 778. Section 506(d) "simply makes the point that, if the secured party's total pre-bifurcation claim is not allowed under § 502 of the Code, any lien securing that claim is void." David Gray Carlson, *Bifurcation of Undersecured Claims in Bankruptcy,* 70 Amer. Bankr.L.J. 1, 13 (Winter 1996).

Therefore, section 506(d) cannot be used in combination with section 506(a) to avoid a home mortgage that is partially or wholly unsupported by equity in the debtor's home.

### III. Conclusion

Any creditor holding a security interest in real property that is a debtor's principal residence is precluded by 11 U.S.C. § 1322(b)(2) from stripping away all or a portion of the claim even though the residence may have a value less than the claim. *Nobelman* expressly compels this conclusion when the claim is undersecured by the value of the home. The result is no different when the claim and security interest is completely "underwater."

Therefore, in connection with the debtor's proposed plan and motion pursuant to sections 506(a) and 506(d), an order shall issue as follows:

1. The debtor's home shall be valued at $85,000;

2. The deed of trust of HFC shall not be voided;

3. Confirmation of the plan is denied because it impermissibly modifies the claim of HFCn as prohibited by 11 U.S.C. § 1322(b)(2); and

4. The debtor shall be given 10 days from entry of the order to file an amended plan.