In re Howard M. LEWANDOWSKI and Donna J. Lewandowski, Debtors.

Howard M. LEWANDOWSKI and Donna J. Lewandowski, Plaintiffs,

v.

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Defendants.

Bankruptcy No. 97–23389 JKF.
Adversary No. 97–2250.

United States Bankruptcy Court,
W.D. Pennsylvania.

April 3, 1998.

Daniel J. Gates, Pittsburgh, PA, for Debtors.

Paul E. Skirtich, Asst. District Atty., Pittsburgh, PA, for U.S. Dept. of Housing and Urban Development.

1. The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

2. HUD has a Title I program for loans for home improvements for poor credit risks who cannot obtain a commercial loan. Debtors obtained a second mortgage with Freedmont builders, an authorized lender of HUD under the Title I program. HUD is the guarantor of the loan.

3. Section 506(a) provides

> An allowed claim of a creditor secured by a lien on property in which the estate has an

## MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD, Bankruptcy Judge.

### I. *Introduction*

The matter before the court is the motion of the United States Department of Housing and Urban Development (HUD) [2] for summary judgment pursuant to Debtors' Complaint to Determine Secured Status and to Avoid Mortgage. In their complaint Debtors seek a determination that HUD's second mortgage claim is wholly unsecured and is avoidable in its entirety under 11 U.S.C. § 506. [3] In their Response to Motion for Summary Judgment, Debtors also argue that the anti-modification clause of 11 U.S.C. § 1322(b)(2) [4] is inapplicable to HUD's claim because it is entirely unsecured under § 506(a) and can therefore be stripped off, notwithstanding *Nobelman v. American Sav. Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). The undisputed material facts follow.

The parties stipulated that the mortgage encumbers the Debtors' principal residence located at 5109 Lotus Way, Pittsburgh, Pennsylvania, 15201. They agree that the fair market value of the property is $15,600 and that, on the date HUD's second mortgage in the amount of $9,790 was created, Midfirst Bank held a first mortgage in the amount of $21,000. Thus, there was no equity in the property over and above that secured by the first mortgage when the second mortgage was conveyed, nor is there equity now.

There are two issues before the court. The first is whether HUD's rights can be modified under 11 U.S.C. § 1322(b)(2) on the ground that HUD's mortgage includes a security interest in property other than "real property that is [Debtors'] principal resi-

> interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim....

4. This section provides that the plan may

> modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence ...

dence." The second is whether, under *Nobelman v. American Sav. Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), HUD's mortgage lien can be avoided because it is completely unsecured in that there is not and never was any equity in the real property to support the lien.

## II. *11 U.S.C. § 1322(b)(2)*

HUD contends that its mortgage is secured "only by a security interest in real property that is [Debtors'] principal residence", 11 U.S.C. § 1322(b)(2), and, therefore, is not modifiable. Debtors argue that the mortgage includes collateral in addition to their principal residence and, therefore, the mortgage is modifiable under § 1322(b)(2). We agree with Debtors. The mortgage in this case grants HUD a security interest in the real estate "TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents". Mortgage, Exhibit A to Response to Motion for Summary Judgment. The covenants of the mortgage include an assignment of rents clause and grant a security interest in certain tax and insurance premium payments Debtors are required to make.

## A. *The Rents Clause*

 We previously addressed rents in *In re Wilkinson*, 189 B.R. 327 (Bankr. E.D.Pa.1995), and found that, under Pennsylvania law, rents constitute real property.[5] In the instant case, we also find that an assignment of rents under the covenants to the mortgage at issue does not take HUD's mortgage outside the protection of § 1322(b)(2). Under the terms of the covenant, no assignment occurs until and unless Debtors are collecting rents and (1) the debt is accelerated or (2) the property is abandoned. No one has alleged that any of these events occurred. Accordingly, the mortgage only speaks to unaccrued rents.[6] "[U]naccrued rents constitute reversionary real property." *See In re Brown*, 189 B.R. 3, 4 (Bankr.E.D.Pa.1995), citing *Marine National Bank v. Northwest Pennsylvania Bank & Trust Co.*, 308 Pa.Super. 154, 454 A.2d 67 (1982).

## B. *The Tax and Insurance Premium Clauses*

The mortgage also requires Debtors to pay one-twelfth of the annual taxes and assess-

---

**5.** With respect to the rents, Debtors rely on *Lutz v. Miami Valley Bank*, 192 B.R. 107 (W.D.Pa. 1995), for the proposition that inclusion of rents as security in a mortgage removes the protection afforded by § 1322(b)(2). The district court in *Lutz* relied on *Sapos v. Provident Inst. of Sav.*, 967 F.2d 918 (3d Cir.1992). In *Sapos*, a chapter 13 case, the bank held a security interest in the real property, rents, profits, and wall-to-wall carpeting which the mortgage characterized as a fixture. *Sapos* did not single out "rents and profits" as the factor that took the creditor's interest out of § 1322(b)(2). The court stated that "the note is secured by wall-to-wall carpeting, rents and profits.... the [mortgage] forms ... attempt to reach collateral that is personalty and not realty."

Property interests and their status as personal or real property for bankruptcy purposes are created and defined by state law. *See Nobelman*, 508 U.S. at 329, 113 S.Ct. at 2110; *Commerce Bank v. Mountain View Village, Inc.*, 5 F.3d 34 (3d Cir.1993). In *In re Crystian*, 197 B.R. 803 (Bankr.W.D.Pa.1996), *In re Wilkinson*, 189 B.R. 327 (Bankr.E.D.Pa.1995), and *In re Brown*, 189 B.R. 3 (Bankr.E.D.Pa.1995), this court found that "rents, issues and profits" constitute real property under Pennsylvania law.

Pennsylvania follows the title theory in defining the relationship between mortgagor and mortgagee. Thus, in Pennsylvania, a mortgage is

a conveyance in fee simple to the mortgagee. *Commerce Bank v. Mountain View Village, Inc.*, 5 F.3d 34, 38 (3d Cir.1993). Pennsylvania law also provides that "unaccrued rents constitute reversionary real property." *See In re Brown*, 189 B.R. at 4, citing *Marine National Bank v. Northwest Pennsylvania Bank & Trust Co.*, 308 Pa.Super 154, 454 A.2d 67 (1982). Furthermore, in *Crystian*, we relied in part on *In re Carmany's Estate*, 357 Pa. 296, 302–03, 53 A.2d 731, 734 (1947).

> "For what is land but the profits thereof for thereby vesture, herbage, trees, mines, and all whatever parcel of the land doth pass ." It is presumed that a devise of the rents, issues and profits of the land, without qualification or duration of time, passes the fee.

*In re Crystian*, 197 B.R. at 804. Based on Pennsylvania law as detailed in our opinions in *Crystian*, *Wilkinson*, and *Brown*, inclusion of rents as security for a mortgage does not constitute security in property other than Debtors' principal residence.

**6.** In *Commerce Bank v. Mountain View Village, Inc.*, 5 F.3d 34 (3d Cir.1993), the court held that rents were not estate property when, prepetition, and outside the preference period, the mortgagees enforced their right to rents pursuant to assignment of rents clauses in their mortgages.

ments that may gain priority over the mortgage and one-twelfth of the annual hazard insurance premiums[7] to this lender, unless Debtors are already making that same payment to an institutional lender who holds a prior mortgage.[8] Mortgage at ¶ 2. These payments are called "the Funds" in the Mortgage. *Id.* The lender, pursuant to paragraph 3 of the mortgage, is required to apply all payments it receives under the note and mortgage, including the Funds, to the taxes, assessments, insurance premiums and ground rents, then to interest payable on the note, and then to the principal of the note.[9]

■ The Funds are pledged as additional security for the sums secured by the mortgage. Mortgage at ¶ 2. A pledge is defined as

A ... *deposit of personal property* to a creditor as security for some debt or engagement. Personal property transferred to pledgee as security for pledgor's payment of debt or other obligation.... Another definition is that a pledge is a security interest.... A lien created by delivery of personal property by owner to another, upon express or implied agreement that it shall be retained as security for existing or future debt.

Black's Law Dictionary 1153 (6th ed.1990)(emphasis added). The mortgage, therefore, conveyed a security interest in the Funds to the lender. The mortgage requires

the lender to put the Funds on deposit in an institution which insures its accounts and, under Pennsylvania law, upon deposit, the Funds constitute an account. "Account" is defined at 13 Pa.Cons.Stat.Ann. § 4104(a): "[a]ny deposit ... account with a bank, including a demand, time, savings, passbook, share draft or like account, other than an account evidenced by a certificate of deposit." The Funds are not real property used as Debtors' principal residence. They are personalty. Accordingly, under § 1322(b)(2), the mortgage is modifiable because HUD has taken a security interest in collateral other than real property that is Debtors' principal residence.[10]

### III. *11 U.S.C. § 506*

Debtors also seek to avoid the mortgage in its entirety through § 506. The parties agree that HUD's claim is completely unsecured under § 506. Section 506(a) provides that

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim....

---

7. In *In re Crystian*, 197 B.R. 803, 805 (Bankr. W.D.Pa.1996), we distinguished hazard insurance proceeds from the premiums and concluded that the insurance policy and the proceeds do not constitute additional security.

8. The Pennsylvania Supreme Court explained the inception of lenders' practice of requiring debtors to deposit funds toward tax and insurance payments as follows:
 In the 1930's substantial numbers of foreclosures were caused by inability to pay annual assessments. As a result of this, banks began requiring the monthly tax payments. The theory was that individual homeowners, especially small borrowers, would find it easier to make monthly payments of one-twelfth the yearly taxes, than to meet in a single payment the annual bill. The practice has continued ever since.
 *Buchanan v. Brentwood Federal Savings and Loan Association*, 457 Pa. 135, 141, 320 A.2d 117, 121 (1974).

9. Paragraph 2 of the mortgage gives Debtors an option to require any excess of the Funds to be refunded or credited against the monthly installment due for the taxes and insurance premiums. The parties have not provided evidence of which option Debtors chose, or whether Debtors were making such payments to another institutional lender. Regardless, paragraph 3 requires the lender to apply all payments it receives, as stated in the text, *supra.*

10. *But see In re Rosen*, 208 B.R. 345 (D.N.J. 1997)(tax and insurance premium payments supplied by debtor and escrowed by lender do not constitute additional security apart from the realty). *Rosen* is not on point with the facts of this case because the Funds secured to the lender through the mortgage in the pending matter constitute collateral other than realty by definition and do not serve as Debtors' principal residence in fact.

Debtors suggest that we should avoid the lien because the claim is unsecured by value in the realty. However, the Supreme Court has declared that valuation cannot be used as a basis to strip off a properly perfected mortgage lien. In *Nobelman v. American Sav. Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), the Supreme Court was faced with the issue of whether a chapter 13 plan could strip off the unsecured portion of a mortgage. The Court held that "§ 1322(b)(2) prohibits a Chapter 13 debtor from relying on § 506(a) to reduce an undersecured homestead mortgage to the fair market value of the mortgaged residence." 508 U.S. at 325, 113 S.Ct. at 2108.

Since *Nobelman* was decided, courts have questioned whether its prohibition on strip-down applies to a wholly unsecured mortgage. The majority view is that when a mortgage is completely unsecured, the lien can be stripped off in its entirety and § 1322(b)(2) does not apply. Although *Nobelman* was decided based on the *rights* of the holder of the secured claim under § 1322(b)(2), courts espousing the view that a wholly unsecured lien can be stripped off focus on valuation under § 506(a) of the collateral securing the lien. These courts view *Nobelman* as limited to situations in which the claim is at least partially secured. *See In re Lam*, 211 B.R. 36 (9th Cir. BAP 1997)(security interest wholly unsecured based on fair market value at time of litigation; anti-modification clause does not extend to such interests); *In re Cervelli*, 213 B.R. 900 (Bankr.D.N.J.1997)(Supreme Court's remarks in *Nobelman* concerning protection of creditor's rights under § 1322(b)(2) were made in the context of a claim partially, not wholly, unsecured). *See also Wright v. Commercial Credit Corp.*, 178 B.R. 703, 707 (E.D.Va.1995), appeal dismissed 77 F.3d 472 (4th Cir.1996)(*Nobelman* does not apply where creditor's claim is completely unsecured); *In re Thomas*, 177 B.R. 750 (Bankr.S.D.Ga.1995)(protection of § 1322(b)(2) does not extend to junior lien-

holders whose claims are wholly unsecured); *Matter of Plouffe*, 157 B.R. 198, 200 (Bankr. D.Conn.1993)("to claim the protection against modification granted by § 1322(b)(2), the mortgagee must qualify as the holder of a secured claim to some extent as determined by § 506(a)").

The minority espouses the view that *Nobelman's* prohibition against stripping down a lien applies to properly perfected security interests represented by residential mortgages, even when the claim is wholly unsecured. *See In re Barnes*, 207 B.R. 588 (Bankr.N.D.Ill.1997)(concentration on partially secured interests is a misreading of *Nobelman's* focus on rights); *In re Shandrew*, 210 B.R. 829, 831 (Bankr.E.D.Cal.1997)(*Nobelman* found that "secured claim" is determined by § 506(a); "claim secured . . . by" in § 1322(b)(2) refers to the entire claim, including its secured and unsecured components); *In re Neverla*, 194 B.R. 547, 549 (Bankr.W.D.N.Y.1996)(right of mortgagee to be paid in full is not modifiable in chapter 13 even if wholly unsecured); and *In re Jones*, 201 B.R. 371, 374 (Bankr.D.N.J. 1996)(the existence of the mortgage lien and not the value of the collateral determines the applicability of § 1322(b)(2)).

 The debate over the applicability of *Nobelman* to totally unsecured mortgages was articulated in *In re Barnes* wherein the court noted that the majority view, rather than assessing creditors' rights in the collateral, as required by § 1322(b)(2) and the Supreme Court in *Nobelman*, "looked . . . to § 506(a) for valuation of the creditor's claim." 207 B.R. at 592. However, § 1322(b)(2) protects "all properly perfected Homestead Mortgages irrespective of the value of the debtor's residence." *In re Neverla*, 194 B.R. 547, 552 (Bankr.W.D.N.Y.1996). Lienholders have the right to foreclose under state law, regardless of whether there is equity to support the lien. *In re Shandrew*, 210 B.R. 829 (Bankr.E.D.Cal.1997).[11]

---

**11.** The impracticality of exercising a right to foreclose against a property that is overencumbered with prior liens was noted in *In re Lam*, 211 B.R. 36 (9th Cir. BAP 1997), and we are cognizant of this reality. Nonetheless, the Supreme Court decided *Nobelman* and we are not free to ignore rulings of the Supreme Court, regardless of their practical effect. Moreover, the Supreme Court has found that property rights are created and defined by state law. *See Barnhill v. Johnson*, 503 U.S. 393, 398, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992); *Butner v.*

Under the majority view, whether a creditor's rights are modifiable could hinge on the existence of merely one dollar of value supporting the lien. *See In re Jones,* 201 B.R. 371 (Bankr.D.N.J.1996). In *In re Neverla,* 194 B.R. 547 (Bankr.W.D.N.Y.1996), the court pointed out that the majority view would render a good faith lender unsecured if prior liens exceeded the value of collateral, even if this was caused by the debtor's failure to pay the mortgage or tax obligations, resulting in diminution of the equity. 194 B.R. at 551. Of course, the risk of a decrease in value available to support the obligation secured by a lien is always present. However, any such diminution would affect only the amount that could be collected upon foreclosure and not the mortgagee's right to foreclose.

The facts of *In re Bauler,* 215 B.R. 628 (Bankr.D.N.M.1997), are similar to those in the case before us. In *Bauler* the debtor objected to the second mortgagee's claim on the ground that the mortgage was and always had been entirely unsecured. There was no dispute that the property value was always less than the amount due on the note secured by the second mortgage. Recognizing that *Nobelman* did not address this precise situation, the court in *Bauler* concluded that the most logical and reasoned approach, and that most consistent with *Nobelman,* was the minority view, i.e, that the rights of the holder of a completely unsecured mortgage collateralized only by a debtor's principal residence are protected from modification under § 1322(b)(2).

■ After careful review of the cases, we join the minority insofar as it declares that, in a chapter 13, the mortgage lien cannot be avoided based on the valuation of the claim under § 506(a), even where there is no equity to support the claim. We find that any other holding would not fairly apply the dictate of the Supreme Court in *Nobelman,* however unfortunate that result may be for debtors in the context of chapter 13.

### IV. *Conclusion*

In this case, HUD has a security interest in collateral other than Debtors' principal residence. Section 1322(b)(2) provides that, under these circumstances, HUD's rights can be modified in the chapter 13 plan. Modifiable rights include HUD's right to be paid the full amount of its claim. To be paid through the plan, the claim must be classified. Because there is no secured component of the claim,[12] it can be classified and paid only as unsecured.[13] Thus, Debtors must amend their plan to include HUD's claim in the class of unsecured creditors and must pay HUD accordingly. The lien will survive under *Nobelman* until Debtors have completed all plan payments and receive their chapter 13 discharge. At that time, Debtors will have fulfilled their obligations under the mortgage and the Bankruptcy Code. HUD will have been paid all that it is entitled to be paid as an unsecured creditor, inasmuch as its rights are modifiable under § 1322(b)(2), and will be required to mark its lien satisfied.

U.S., 440 U.S. 48, 54–55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979), cited by *Nobelman,* 508 U.S. at 329, 113 S.Ct. at 2110. In Pennsylvania, a mortgage creates a defeasible title interest in the mortgagee. *Commerce Bank v. Mountain View Village, Inc.,* 5 F.3d 34, 38 (3d Cir.1993). Creation of this interest (and the rights attendant to it under state law) is not dependent on the existence of equity in the property at the time the lien comes into being. Similarly, there is no requirement that equity exist before a security interest can be given and a lien created. No one argues in the matter before us that the lien did not attach to the realty.

**12.** In *Nobelman* the court recognized that under § 506(a) "claim secured ... by" a lien includes the entire claim, including its secured and unsecured components. 508 U.S. at 331, 113 S.Ct. at 2111.

**13.** Section 1322(b)(2)'s focus on rights "does not state that a plan may modify 'claims' or that the plan may not modify 'a claim secured only by' a home mortgage. Rather, it focuses on the modification of the 'rights of holders' of such claims." *Nobelman,* 508 U.S. at 328, 113 S.Ct. at 2109–10.