In re William E. **BOEHMER** and Theresa A. Boehmer, Debtors.

William E. Boehmer and Theresa A. Boehmer, Plaintiffs,

v.

Essex, Defendant.

Bankruptcy No. 98–35382 SR. Adversary No. 99–267.

United States Bankruptcy Court, E.D. Pennsylvania, Philadelphia Division.

Nov. 1, 1999.

Michael A. Latzes, Philadelphia, PA, for debtor.

Frederick L. Reigle, Reading, PA, trustee.

OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

*Introduction.*

The Debtors have filed a complaint pursuant to 11 U.S.C. § 506(a) and Bankruptcy Rule 3012 to determine the value of a creditor's security, and hence its allowed claim. This adversary proceeding presents two legal issues, each of which is at once straightforward but deceptively complex. The legal issues are succinctly set forth in the parties' pre-trial memorandum, as follows: first, may the defendant/creditor's second lien residential mortgage . be modified under 11 U.S.C. § 1322(b)(2) on the grounds that the mortgage of the creditor, Essex, includes a security interest in property other than real property that is the debtors' residence; second, can Essex's lien be avoided because it is completely unsecured; that is to say, because there is no equity to support the second lien since the amount of the first lien exceeds the value of the property?

The parties agree that there are no facts in dispute. Their Pre–Trial Statement offers the following statement of uncontested facts:

1. The plaintiffs, William E. Boehmer and Theresa A. Boehmer, filed a Voluntary Chapter 13 Petition on November 30, 1999.

2. The real property located at 3314 Kayford Circle, Philadelphia, PA, is owned by William E. Boehmer and Theresa McGlinn Boehmer, (h/w), and was acquired on August 23, 1996. (Deed to real property is attached hereto). This is Plaintiff's principal residence.

3. The defendant, Essex, holds a second mortgage dated September 3, 1997 on real property and recorded in Mortgage Book JTD 835, page 341, on November 4, 1997, in the amount of Twenty Five Thousand ($25,000.00) Dollars.

4. Defendant, Essex, filed a Proof of Claim on February 19, 1999, for the sum of $28,747.34 (Essex's Proof of Claim and mortgage are attached hereto).

5. EMC Mortgage Corp. is the first listed mortgagee by mortgage dated August 23, 1996, and recorded in Mortgage Book JTD 250, page 582 on October 30, 1996.

6. EMC Mortgage Corp. filed a Proof of Claim on March 31, 1999, in the amount of $91,464.54. (EMC's Proof of Claim and mortgage are attached hereto).

7. The real property is encumbered by a third mortgage held by Household Finance Corp., dated November 19, 1997, and recorded in Mortgage Book JTD 945, Page 529, on December 31, 1997, in the amount of $16,000.00.

8. A Proof of Claim was filed on December 7, 1998, in the amount of $18,110.42, by Household Finance Corp. (Household's Proof of Claim and mortgage are attached hereto).

9. The fair market value of the real property according to Plaintiff is Ninety Thousand ($90,000.00) Dollars as provided by an appraisal obtained by Plaintiff dated July 2, 1999. (Appraisal attached hereto).

Appended to the Pre–Trial Statement are the exhibits referenced above.

Trial was held September 29, 1999, at which time the parties offered legal argument only. For the reasons discussed herein, the Court finds in favor of Essex on both of the issues in dispute. Judgment will accordingly be entered in favor of Essex and against the Debtors.

### A. Additional Security as Basis for Modification of Mortgage.

 The Debtors' position on this issue is predicated upon language in the mortgage instrument which requires the payment of funds to be held in escrow by the mortgagee for the payment of taxes and insurance on the mortgaged property. The presence of this language, it is argued, renders the anti-modification provisions of 11 U.S.C. § 1322(b)(2) inapplicable, notwithstanding the opinion of the Supreme Court in *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). This Debtors' basic premise is correct and several courts, including the Third Circuit Court of Appeals, have indeed held that lien avoidance remains permissible, even against the holders of residential mortgages, where the mortgage is interpreted to be secured by property in addition to real property that is the debtor's principal residence. *In re Hammond*, 27 F.3d 52 (3d Cir.1994): *In re Johns*, 37 F.3d 1021 (3d Cir.1994); *Sapos v. Provident Institution of Savings in the Town of Boston*, 967 F.2d 918 (3d Cir. 1992). A collateral area of uncertainty which these decisions have spawned, however, is what constitutes additional property for these purposes. The Debtors note correctly that this more narrow topic has produced a body of conflicting case law. Included among the published decisions are those cited by the Debtors; to wit: *In re Steslow*, 225 B.R. 883 (Bankr.E.D.Pa. 1998); *In re Lewandowski*, 219 B.R. 99 (Bankr.W.D.Pa.1998); *Lutz v. Miami Valley Bank*, 192 B.R. 107 (W.D.Pa.1995); *In re Oglesby*, 150 B.R. 620 (Bankr.E.D.Pa. 1993); *In re Hirsch*, 155 B.R. 688 (Bankr. E.D.Pa.1993) *Hammond v. Commonwealth Mortgage Co.*, 156 B.R. 943 (E.D.Pa.1993); *and In re Klein* 106 B.R. 396 (Bankr.E.D.Pa.1989). These decisions support the Debtors' position, particularly *Lewandowski*, and *Klein*, each of which involved, *inter alia*, the question of realty taxes and insurance. The particular species of alleged additional property here is, as noted, escrow payments for realty taxes and hazard insurance. Notwithstanding *Lewandowski* and *Klein*, however, this Court and several others have held that such forms of property do not have independent value beyond the maintenance and protection of the collateral, and do not, therefore, take a mortgage which provides for them outside the scope of Code Section 1322(b)(2)'s protection. *See: Rodriguez v. Mellon Bank (In re Rodriguez)*, 218 B.R. 764 (Bankr.E.D.Pa.1998), and cases cited

therein. The provisions of the instant mortgage with respect to the point in issue are virtually the same as those in *Rodriguez*. While readily acknowledging that inconsistent decisions, and the absence of controlling appellate authority, make this issue a consternating one for creditors and debtors alike, the Court at this juncture perceives nothing to persuade it that a result different than that reached in *Rodriguez* is warranted here. Accordingly, for the reasons more fully discussed in *Rodriguez*, the Court finds in favor of Essex and against the Debtors on the first of the two questions presented.[1]

## B. Essex's Wholly Unsecured Claim.

■ The parties' statement of uncontested facts recites that the fair market value of the subject property is $90,000, but that such figure is "according to plaintiff." No other challenge to value has been interposed by Essex. The Court will therefore presume that the fair market value of the property, and hence the fact that Essex's claim is indeed wholly unsecured under 11 U.S.C. § 506(a), is undisputed.

The legal question presented has generated substantial case law which is every bit as difficult to reconcile as those cases addressing the preceding question of mortgagees and the taking of additional security. Judges and commentators alike have noted that the relevant statutory language is simply not dispositive and, indeed, the issue is susceptible to reasonable argument either way. See: Lawrence Ponoroff, *Modifying Wholly Unsecured Home Mortgage Loans in Chapter 13: If They're Under Water, Let 'Em Drown.*, 7 Journal of Bankruptcy Law and Practice, 625, ———— (1998).

In a publication entitled *Recent Developments in Chapter 13*, the authors, Bankruptcy Judge Keith M. Lundin of Tennessee, along with Henry C. Hildebrand, III,

the region's Chapter 13 Trustee, have synopsized and discussed a sampling of cases on each side of this question, as follows:

c. Claim splitting under § 506

(1) *Nobelman* and "unsecured mortgages"

(a) Protected from modification

*Tanner v. Firstplus Financial Inc. (In re Tanner)*, 223 B.R. 379, 381–82 (Bankr.M.D.Fla.1998) (wholly unsecured second mortgage is protected from modification by *Nobelman* and § 1322(b)(2). *Nobelman* notes that § 1322(b)(2) 'does not state that a plan may modify "claims" or that the plan may not modify "a claim secured only by" a home mortgage. Rather, it focuses on the modifications of the "rights of holders of such claims." ' ... The rights of an undersecured creditor included the right to repayment over the term of the loan, to retain the lien until full payment is made, to accelerate and foreclose on the residence if the debtor defaults on its payments, and to recover any deficiency after foreclosure ... The plain meaning of § 1322(b)(2) prohibiting modification of "a claim secured only by a security interest in 'real property' shows Congress's intent to except the 'claim' from modification.... The prohibition against claim modification protects both unsecured and secured encumbrances on the Debtor's home.... The expansive definition of 'rights' afforded to secured creditors under Florid law, even without equity in the mortgaged property, protects the mortgagee from modification pursuant to *Nobelman*.")

*Lewandowski v. U.S. Dep't of Housing & Urban Dev. (In re Lewandowski)*, 219 B.R. 99, 105 (Bankr.W.D.Pa. 1998) (completely unsecured second

1. An illustration of the difficulties which abound in § 1322(b)(2) litigation exists in the *Lewandowski* decision, which is supportive of the Debtor's position on the additional property issue, but adverse to the Debtor's position on the lien stripping issue discussed *infra*.

mortgage is protected from modification by *Nobelman* and § 1322(b)(2). "After careful review of the cases, we join the minority insofar as it declares that, in a chapter 13 case, the mortgage lien cannot be avoided based on the valuation of the claim under § 506(a), even where there is no equity to support the claim. We find that any other holding would not fairly apply the dictate of the Supreme Court in *Nobelman.*")

*In re Bauler,* 215 B.R. 628, 632–33 (Bankr.D.N.M.1997)("authorities holding that a completely unsecured mortgage on a principal residence is nevertheless protected under § 1322(b)(2) from modification is the most logical and reasoned approach, and the most consistent with the Supreme Court decision in *Nobelman* .... This result is also supported by policy considerations.")

(b) Not protected from modification.

*Lam v. Investors Thrift (In re Lam),* 211 B.R. 36, 40–41 (9th Cir. BAP 1997) (wholly unsecured mortgage is not protected from modification by § 1322(b)(2) or *Nobelman.* "[T]he state law 'rights' afforded a holder of an unsecured 'lien', if such a situation exists, indicates these rights are empty rights from a practical, if not a legal, standpoint.... The policies behind section 1322(b)(2) lend further support to this view.... [E]xtending section 1322(b)(2)'s protection to secured creditors holding completely unsecured claims 'might induce more debtors who would qualify for chapter 13 relief to file chapter 11 cases' .... A point of concern is that ... outcomes of cases will turn on appraisers' estimates of property values... [A][ ] one dollar difference in property value could have a profound effect on a secured creditor's rights.... We believe this concern to be unfounded.")

*Johnson v. Asset Management Group, LLC,* 226 B.R. 364 (D.Md.1998) (wholly unsecured junior lien on residence can be stripped off and treated as an unsecured debt without violating the anti-modification provisions of § 1322(b)(2) or *Nobelman).*

*In re Phillips,* 224 B.R. 871, 872–73 (Bankr.W.D.Mich.1998) (citing *Hornes,* 160 B.R. 709 (Bankr.D.Conn. 1993), "A creditor must hold a secured claim in both the literal and the code senses in order to come within the anti-modification provision of § 1322(b)(2) ... Policy reasons also support this position... [T]he congressional intent of encouraging home lending by residential mortgagees does not apply to second mortgagees because they are not in the business of lending money for home purchases.")

*In re Cerminaro,* 220 B.R. 518, 522–24 (Bankr.N.D.N.Y.1998) (reaffirming *Scheuer,* 213 B.R. 415 (Bankr. N.D.N.Y.1997) and disagreeing with *Pond v. Farm Specialist Realty (In re Pond),* Case No. 96–10015, Advs. 96–91213 (Bankr.N.D.N.Y Jan. 29, 1998), wholly unsecured junior mortgages are not protected from modification by § 1322(b)(2). "A majority of courts, including this Court in *Scheuer,* ... have interpreted *Nobelman* as indicating that a mortgagee must first qualify under Code § 506(a) as a holder of a secured claim in order to obtain the protection of Code § 1322(b)(2) .... [A] holder of a security interest in the debtors' principal residence that is determined to have a completely unsecured claim is not entitled to the protection of Code § 1322(b)(2).")

*In re Bivvins,* 216 B.R. 622, 625 (Bankr.E.D.Tenn.1997) (wholly unsecured third mortgage is not protected from modification by § 1322(b)(2) of *Nobelman.* "The court realizes that its interpretation of the statute creates a cut-off point that depends on the valuation of the debtor's home....

The law sometimes uses cut-off points such as this even if they appear to unfair.")

*Smith v. First Citizens Bank (In re Smith)*, 215 B.R. 716, 718–19 (Bankr. W.D.Tenn.1998) (wholly unsecured third mortgage is not protected from modification by § 1322(b)(2) or *Nobelman*. "To agree with Greentree's argument, the court must interpret the home mortgage exception as broader than the rule to which it is an exception. According to the Supreme Court, the general rule provides that a plan can modify the rights of allowed secured claims. Greentree contends the exception applies to the rights of a claimholder who has only an unsecured claim 'secured only by' a home mortgage. This is the same things as saying that § 1322(b)(2) silently repeats the home mortgage exception in the subsequent portion of the statute that allows a plan to modify the rights of holders of *unsecured* claims.... Greentree is not the holder of an allowed secured claim. Therefore, the portion of § 1322(b)(2) that allows a plan to modify the rights of holders of allowed secured claims is irrelevant to how the plan can deal with Greentree's claim. Likewise, the home mortgage exception is irrelevant since it is contained within the portion of § 1322(b)(2). The plan can modify Greentree's rights as the holder of an unsecured claim.") ** *Id.* @ page 53.

The above list is hardly exhaustive, although the cases set forth the principal arguments which have been advanced on this question. As Professor Ponoroff notes in his recent article, as matters now stand, some Chapter 13 debtors obviously will be able to strip wholly unsecured liens, and some will not, and the issue may turn not simply on which district they are required to file in, but on which judge they draw. (Ponoroff *supra* at Footnote 52

** Hon. Keith M. Lundin, & Henry E. Hildebrand, III, *Recent Developments in Chapter 13*

comparing *In re Cervelli*, 213 B.R. 900, 31 Bankr.Ct. Dec. (CRR) 775, 37 Collier Bankr.Cas.2d (MB) 1595 (Bankr.D.N.J. 1997) (permitting stripping off of junior mortgagee's totally unsecured claim) with *In re Jones*, 201 B.R. 371, 37 Collier Bankr.Cas.2d (MB) 287, Bankr.L.Rep. (CCH) ¶ 77173 (Bankr.D.N.J.1996), corrected, (Oct. 21, 1996) (holding that an entirely unsecured second mortgage claim was not subject to modification)). It hardly needs saying that this is a most unfortunate state of affairs, and indeed, as Professor Ponoroff notes, this sort of uncertainty and lack of uniformity is destructive of the integrity of the system and promotes the potential for forum shopping that threatens to erode already shaky public confidence in the consumer bankruptcy system. Be that as it may, until there is congressional action, or at least controlling appellate precedent, the situation is unlikely to remedy itself. Each judge will simply have to determine which of the two competing positions is to him or her the most persuasive. This Court, regrettably, finds itself unable to offer fresh insights into this nettlesome question, but it has carefully considered the many arguments which have been made and discussed by others. Having done so, the Court joins the ranks of what is said by some to be a minority camp, but which may be growing in numbers.

In this vein, the Court notes the recent thorough opinion by Judge Fox in *In re Meade*, Bankr.No. 98–32648 (Bankr.E.D. Pa., June 3, 1999), the briefer decision of Judge Woodside of the Middle District in *In re Warkoski v. American General Finance Corp.* Bankr.No. 1–97–00013, Advs. NO. 1–97–00159 (Bankr.M.D.Pa. July 6, 1998), *In re Neverla*, 194 B.R. 547 (Bankr. W.D.N.Y.1996); *In re Jones*, 201 B.R. 371 (Bankr.D.N.J.1996); and *In re Barnes*, 199 B.R. 256 (Bankr.W.D.N.Y.1996), decisions which are all in the so called minority camp prohibiting lien stripping of wholly

(The FJC Workshop for Bankruptcy Judges, Baltimore, MD April 6–8, 1999).

unsecured mortgages. These decisions and others like them admittedly do not completely put to rest the Debtors' statutory and *stare decisis* arguments, nor do they completely refute the plausible argument that legislative intent in this area may have been focused on encouraging the building and purchase of new homes, rather than the interests of 2nd mortgage lenders. The fact that the arguments made by proponents of the permissive lien stripping school have some validity, however, does not carry the day. There are equally, and in this Court's view more, cogent arguments which weigh in favor of a contrary result. As numerous courts have noted, the result which the debtors and others advocate simply places too much emphasis, and too great a reliance, on the inexact art of real estate appraisal. The Court in *In re Shandrew*, 210 B.R. 829, (Bankr.E.D.Cal.1997), observed this and noted Judge Keith M. Lundin's analysis of this point, as follows:

> This court cannot ascribe to Congress the odd intent to extend the antimodification protection in § 1322(b)(2) to residential mortgage holders with any toehold on the debtor's property and to refuse that same protection where collateral values have shifted a peppercorn below the creditor's position. The lien rights of either creditor under state law ... are typically the same whether the mortgage holders is a dollar above or a dollar below the allowed secured claim threshold. This reading in *Nobelman* puts an undeserved premium on valuation of residential real property—it assumes a degree of accuracy in the valuation process that is without foundation in reality. *Id.* at 832.

The above point seems quite well taken, and the Court believes that proponents of the permissive theory have indeed adopted a questionably overbroad reading of the Supreme Court decision in *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). Further, as noted in *Meade, supra*, the adoption of the permissive theory of lien stripping could arguably foster illogical disincentives on the part of Chapter 13 debtors to qualify for relief, such as the taking of steps either to reduce the value of their home (i.e., through differed maintenance) or to increase the amount owed to a first lien holder (i.e., by stopping the remittance of first mortgage payments.) This Court agrees with the *Meade* Court that it is unlikely that § 1322(b)(2) was designed to encourage such pre-bankruptcy planning.

For all of the foregoing reasons, this Court concludes that Essex's lien, although wholly unsecured, may not be stripped due to the prohibition found in 11 U.S.C. § 1322(b)(2). Thus, the value of the Debtors' realty is declared to be $90,000, the request to declare the lien of Essex avoided will be denied, and Essex's claim will be allowed, in the filed amount, albeit as a general unsecured claim without priority.