**In re Mike BAULER, Debtor.**

**Bankruptcy No. 13-97-11175 MA.**

United States Bankruptcy Court, D. New Mexico.

Dec. 11, 1997.

William C. Salmon, Attorney at Law, Albuquerque, NM.

Melody F. Williams, Attorney at Law, Albuquerque, NM, for Debtor.

### MEMORANDUM OPINION

MARK B. McFEELEY, Chief Judge.

THIS MATTER came before the Court upon FirstPlus Financial's Objection to Confirmation and the Debtor's Objection to Proof of Claim. FirstPlus Financial (FirstPlus) objected to the confirmation of the Debtor's Chapter 13 plan on the grounds that the Debtor was attempting to strip off the second mortgage held by FirstPlus on the Debtor's principal residence contrary to the anti-modification provision in 11 U.S.C. § 1322(b)(2). The Debtor objected to the secured status of FirstPlus' Proof of Claim, asserting that the claim was completely unsecured. The Court, having heard the arguments of counsel, examined the pleading and briefs, and being otherwise fully advised, finds that the second mortgage held by First-Plus is fully secured pursuant to 11 U.S.C. § 1322(b)(2).

### FACTS

Debtor filed a voluntary Chapter 13 petition on March 3, 1997. In that petition, Debtor listed as his principal residence a mobile home and real property located at 403 Miller Road, Los Lunas, New Mexico. This property is subject to two mortgages. The first mortgage, securing a debt of approximately $99,000, is held by Green Tree Financial. The second mortgage, and the subject of the matter at bar, is held by FirstPlus and secures a debt of approximately $19,000. The parties have stipulated that the value of the residence is $99,000.

On March 14, 1997, Debtor filed a Chapter 13 plan. On March 28, 1997, FirstPlus filed a proof of claim. FirstPlus objected to the confirmation of the plan because the Debtor was attempting to strip off FirstPlus' lien by treating it as completely unsecured. First-Plus asserted that this treatment was contrary to 11 U.S.C. § 1322(b)(2), which prevents debtors from modifying the rights of holders of claims secured only by a security interest in the debtor's principal residence. FirstPlus notes that § 1322 contains no provision that qualifies subsection (b)(2) in instances where the value of the collateral is such that the value of the Debtor's principal residence upon sale or foreclosure would result in no funds being distributed to the holder of a mortgage.

The Debtor subsequently filed an objection to FirstPlus' proof of claim contending that FirstPlus' claim is entirely unsecured as the value of the real estate is, and always has been, only sufficient to cover the balance due under the first mortgage. The parties agree that the property never had value over and above the amount due on the note secured by the first mortgage held by Greentree. The Debtor asserts that it would be unjust to convert a claim that was fully unsecured

upon inception to a fully secured claim just because the security interest is on the Debtor's primary residence.

## ISSUE

■ May a Chapter 13 Debtor strip off[1] a wholly unsecured second mortgage pursuant to 11 U.S.C. § 506(a) despite the prohibitions against modifying the rights of holders of secured claims[2] in the Debtor's principal residence contained in 11 U.S.C. § 1322(b)(2)?

## DISCUSSION

This is a case of first impression in this Court, as well as a case of first impression in the Tenth Circuit. This case concerns the interaction of two sections of the Bankruptcy Code (Code)—section 506(a) and section 1322(b)(2).

Section 506(a) of the Code provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim.

11 U.S.C. § 506(a).

In this case, the value of the Debtor's residence has been stipulated by the parties to be $99,000. The amount of the underlying first mortgage lien on the residence is approximately $99,000. Thus, the second mortgage lien held by FirstPlus is an entirely unsecured claim pursuant to § 506(a) as the value of the residence is only sufficient to cover the balance due under the first mortgage.

■ In a Chapter 13 plan, the Debtor can modify the rights of holders of unsecured claims, provided that all unsecured claims in the same class are treated equally. 11 U.S.C. § 1322(b). Pursuant to § 1322(b)(2), the plan may also "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*". 11 U.S.C. § 1322(b)(2) (emphasis added). Thus, even though a claim may be wholly unsecured under § 506(a) and could be effectively discharged under the terms of a Chapter 13 plan, if the claim is secured by a mortgage on the debtor's principal residence, § 1322(b)(2) seemingly prohibits the Debtor from modifying the debt or avoiding the mortgage lien in the Chapter 13 plan.

The apparent conflict between § 506(a) and § 1322(b)(2) was addressed by the Supreme Court in *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). The *Nobelman* decision settled a conflict between the Circuit Courts of Appeal by holding that section 1322(b)(2) bars a chapter 13 plan from modifying the rights of holders of undersecured claims, secured only by the debtor's principal residence. *See In re Lam,* 211 B.R. 36, 38 (9th Cir. BAP 1997). In *Nobelman,* the debtors had a first mortgage on their residence valued at approximately $71,000. The uncontroverted value of the residence at the time the Chapter 13 plan was filed was $23,500. In their plan, the debtors proposed to make payments on the first mortgage only up to value of the residence, and treat the remainder of the claim as unsecured. Under the terms of the plan, the unsecured creditors would receive nothing. The creditor argued that the proposed bifurcation of the creditor's claim into a secured claim and an effectively worthless unsecured claim was in violation of § 1322(b)(2). The debtors asserted that the

---

1. The term "strip off" refers to lien avoidance pursuant to Section 506(d) in a Chapter 13 context (Section 1322 of the Bankruptcy Code). "[I]n recent *Nobelman* related litigation, the term 'strip off' is applied where a junior mortgagee is totally unsecured as to the debtor's principal residence, while the term 'strip down' is still used where a mortgage is partially secured, and partially unsecured." *In re Woodhouse,* 172 B.R. 1 at n. 1 (Bankr.D.R.I.1994).

2. The term "claim" is defined in § 101(5) of the Bankruptcy Code as follows: "claim" means—
   (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
   (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment . . .

protection of § 1322(b)(2) applies only to the extent that the mortgage holds a "secured claim" in the debtor's residence and that the Court must first look to § 506(a) to determine the value of the mortgagee's "secured claim".

The Supreme Court held that § 1322(b)(2) prohibited a Chapter 13 debtor from reducing an undersecured homestead mortgage. *See* 508 U.S. at 332, 113 S.Ct. at 2111–12. The Court stated that the debtor's argument failed to take consideration of § 1322(b)(2)'s focus on "rights". *See id.* at 328, 113 S.Ct. at 2109–10. The Court found that the provisions in § 1322(b)(2) prohibited the modification of *the rights* of holders of home mortgages. *See id.* The Court found it appropriate for the debtors to first look at § 506(a) to determine the judicial valuation of the collateral to determine the status of the creditor's secured claim. *See id.* at 328–29, 113 S.Ct. at 2109–10. Justice Thomas, writing for the unanimous court, noted:

> [T]he bank is still the "holder" of a "secured claim," because petitioners' home retains $23,500 of value as collateral. The portion of the bank's claim that exceeds $23,500 is an "unsecured claim componen[t]" under § 506(a), ... however, *that determination does not necessarily mean that the "rights" the bank enjoys as a mortgagee, which are protected by § 1322(b)(2), are limited by the valuation of its secured claim.*

508 U.S. 324, 329, 113 S.Ct. 2106, 2110 (citations omitted)(emphasis added).[3]

Justice Stevens, in his concurrence, noted that while the apparent conflict in the Code sections may seem strange, it was, however, explained by the legislative history of § 1322(b)(2). *See id.* at 332, 113 S.Ct. at 2111–12. He notes that the favorable treatment of residential mortgagees was intended to encourage the flow of capital into the home lending market. *See id.* He concludes that "[i]t therefore seems quite clear that the Court's literal reading of the text of the statute is faithful to the intent of Congress." *Id.* at 332, 113 S.Ct. at 2111–12.

However, as the Debtor in this case strongly asserts, the Supreme Court in *Nobelman* did not address the situation where the debtor is attempting to treat as unsecured a second mortgage that is completely unsecured, and which, under the facts of this case, exceeded the equity value in the residence since inception. Since the *Nobelman* decision in 1993, several bankruptcy courts have encountered the situation in which a mortgage is completely unsecured. The courts are divided, however, as to the proper treatment of wholly unsecured residential mortgages in the Chapter 13 context.

The Debtor relies on the line of cases that have held that § 1322(b)(2) does not apply to holders of totally unsecured claims.[4] These courts have found that the extension of the protection of § 1322(b)(2) to wholly undersecured lien holders is contrary to the provisions of the Code allowing dischargeability of unsecured claims. In reaching this conclusion, these courts generally rely on the language of the Supreme Court in *Nobelman*

---

**3.** The Supreme Court in *Nobelman* also expressly rejected the "rule of the last antecedent." 508 U.S. at 330, 113 S.Ct. at 2111. The petitioners had argued that the operative clause "other than a claim secured only by a security interest in ... the debtor's principal residence" must be read to refer to, and modify, its immediate antecedent, "secured claims". *Id.* While the Court found that reading of the clause sensible, they found that it was not compelled. *See id.* Instead, the Court found that Congress chose to use the phrase "claim secured ... by" in § 1322(b)(2)'s exception, rather than repeating the term of art "secured claim." *See id.* at 330–31, 113 S.Ct. at 2110–11. In other words, the Court found that Congress could have inserted "secured claim" if that had been their intent.

**4.** *See In re Lam,* 211 B.R. 36 (9th Cir. BAP 1997); *In re Sanders,* 202 B.R. 986 (Bankr.D.Neb.1996); *In re Geyer,* 203 B.R. 726 (Bankr.S.D.Cal.1996); *In re Woodhouse,* 172 B.R. 1 (Bankr.D.R.I.1994); *In re Mitchell,* 177 B.R. 900 (Bankr.E.D.Mo. 1994); *In re Sette,* 164 B.R. 453 (Bankr.E.D.N.Y. 1994); *In re Lee,* 161 B.R. 271 (Bankr.W.D.Okla. 1993); *In re Hornes,* 160 B.R. 709 (Bankr. D.Conn.1993); *In re Williams,* 161 B.R. 27 (Bankr.E.D.Ky.1993); *In re Kidd,* 161 B.R. 769 (Bankr.E.D.N.C.1993); *In re Plouffe,* 157 B.R. 198 (Bankr.D.Conn.1993); *In re Moncrief,* 163 B.R. 492 (Bankr.E.D.Ky.1993). *See, also* 5 Lawrence P.King, et. al., *Collier on Bankruptcy* ¶ 1322.06, at 1322–18 (15th ed. 1996) ("The *Nobelman* opinion strongly suggests, however, that if a lien is completely undersecured, there would be a different result.").

that, "[p]etitioners were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim... But even if we accept petitioners' valuation, the bank is still the 'holder' of a 'secured claim,'" 508 U.S. at 328–29, 113 S.Ct. at 2109–10. The courts have interpreted this language to mean that one must first look to see whether under § 506(a) the claimant holds a "secured claim" or a "unsecured claim component" as defined in *Nobelman* before application of the anti-modification provision in § 1322(b)(2) comes into play. Under this reasoning, if the claim is wholly unsecured, § 1322(b)(2) does not apply, and the Debtor may strip off the mortgage, effectively avoiding it.[5]

Another line of authorities, which has garnered recent support, concludes that mortgage holders have the right to be paid in full, even if their claims are wholly unsecured, and this right cannot be modified by a Chapter 13 plan.[6] These courts have found, when read literally, the prohibition against modification contained in § 1322(b)(2) protect all claims secured by liens on the debtor's principal residence, despite the fact that there is not, nor was there ever, any equity in the residence to secure the mortgage. The opinions reflect the belief that the courts that have held otherwise have ignored the emphasis the *Nobelman* Court placed on the "rights" of the home mortgage creditor, and that those "rights" could not be modified. The courts interpreted the language used by the Supreme Court to indicate that it is the existence of a mortgage lien which determines the application of § 1322 and not the value of the residence subject to the lien.[7] *In re Jones*, 201 B.R. at 374. Thus, these Courts believe that a literal and functional interpretation of § 1322 is consistent with the *Nobelman* decision. *See In re Neverla*, 194 B.R. 547, 550 (Bankr.W.D.N.Y.1996).

■ This Court is of the opinion that the latter line of authorities holding that a completely unsecured mortgage on a principal residence is nevertheless protected under § 1322(b)(2) from modification is the most logical and reasoned approach, and the most consistent with the Supreme Court decision in *Nobelman*. While it may seem either unfair or illogical to find that entirely unsecured mortgages are entitled to full payment in the Chapter 13 context, it is the result supported by the plain language of the exception in section 1322(b)(2).[8] The language

---

**5.** Additionally, some courts tend to invoke the "rule of the last antecedent" to find that the anti-modification of "claims" applies only to "secured claims." *See In re Sanders*, 202 B.R. 986, n. 3 (Bankr.D.Neb.1996). However, this rule of construction was discussed and expressly rejected by the Court in *Nobelman*. *See* 508 U.S. at 330–31, 113 S.Ct. at 2110–11.

**6.** *See In re Shandrew*, 210 B.R. 829 (Bankr. E.D.Cal.1997); *In re Fraize*, 208 B.R. 311 (Bankr.D.N.H.1997); *In re Jones*, 201 B.R. 371 (Bankr.D.N.J.1996); *In re Barnes*, 199 B.R. 256 (Bankr.W.D.N.Y.1996); *In re Neverla*, 194 B.R. 547 (Bankr.W.D.N.Y.1996); *See also* Keith M. Lundin, *Chapter 13 Bankruptcy* § 4.46, p. 4–56 (2nd ed. 1994)("Although the bank's claim in *Nobelman* was partially secured by real property that was the debtor's principal residence, Justice Thomas's analysis ties the protection from modification in § 1322(b)(2) to the existence of a 'claim' secured by a lien on real property, without regard to whether the claim holder would also have an allowed secured claim after valuation and analysis under § 506(a). The clear implication of this analysis is that even a completely *unsecured* claim holder 'secured' only by a lien on real property that is the debtor's principal residence would be protected from modification

by § 1322(b)(2), notwithstanding that such an 'unsecured' lienholder could not have an allowable secured claim under § 506(a). Although the concept of an 'unsecured secured claim' is impossible under § 506(a), Justice Thomas's focus on the 'rights' of the 'holders' of a 'claim secured only by ...' in § 1322(b)(2) extends the protection from modification to claims that are secured by a lien on the debtor's principal residence, without regard to the allowance or disallowance of secured claims under § 506(a). In other words, the trigger for Justice Thomas's protection of rights analysis is the existence of a lien, not the presence of value to support that lien.")

**7.** *See also* Lundin, *supra* note 6, at 4–57 (2d ed. Supp.1995) ("These courts do not explain why Justice Thomas went to such pains ... to link the protection from modification in § 1322(b)(2) to the existence of a 'claim' secured by a lien on a debtor' principal residence if, in addition, the creditor must have a 'secured claim' to trigger that protection.")

**8.** *See also* Lundin, *supra* note 6, at 4–59 (2d.ed.1994)("Ironically, *Nobelman* takes a permissive power of a Chapter 13 debtor in § 1322(b)(2) and turns it into a substantial incentive for lenders to take security interests in a

"a *claim* secured only by a security interest in real property" indicates that Congress intended to except the "claim" from modification. 11 U.S.C. § 1322(b)(2)(emphasis added). Congress knew how to use the term "secured claim" and chose not to use that term in the exception. "If such [home mortgages] claims are to be so modified in future Chapter 13 cases, it should only be after the United States Congress has so clarified Section 1322(b)(2) to specifically provide for such modifications, and not as the result of further judicial interpretations of that subsection." *In re Neverla,* 194 B.R. at 549–50.

This result is also supported by policy considerations. As other courts and authorities have indicated [9], too much emphasis would be placed upon the valuation of the debtor's residence if this Court were to require a § 506(a) valuation to determine whether the mortgage is protected by § 1322(b)(2). For example, if the value of the residence in the instant case were stipulated to be $99,001, merely one dollar above the value of the first underlying mortgage held by Greentree, it would follow that First-Plus would have a "secured claim component" pursuant to *Nobelman* of one dollar, making the anti-modification provision of § 1322(b)(2) applicable, and FirstPlus' claim could not be modified or avoided in the Debtor's Chapter 13 plan.

Finally, this holding is consistent with the legislative intent to protect the flow of credit in the home lending market as spelled out in Justice Steven's concurring opinion in *Nobelman. See* 508 U.S. at 332, 113 S.Ct. at 2111–12.

borrower's residence even when there is no value in the residence for the lender.... *Nobelman* is an unfortunate incentive for some debtors to first consider Chapter 7 relief.")

9. *See also* Lundin, *supra* note 6, at 4–57 (2d ed. Supp.1995) ("Linking the antimodification protection in § 1322(b)(2) to the existence of any allowable secured claim means that a mortgage holder with one dollar of collateral value is protected from modification to the extent of its entire claim, while a mortgage holder pennies 'under water' forfeits the protection from modification with respect to its entire mortgage. This ascribes to Congress the odd intent to ex-

### CONCLUSION

For the foregoing reasons, the Court concludes the Debtor is prohibited from treating FirstPlus' claim as unsecured or otherwise modifying the claim under the Chapter 13 plan. This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. Appropriate orders will be entered.

tend the antimodification protection in § 1322(b)(2) to residential mortgage holders with any toehold on the debtor's property and refused that same protection where collateral values have shifted a peppercorn below the creditor's position. The lien rights of either creditor under state law—rights of much concern to Justice Thomas in *Nobelman*—are typically the same whether the mortgage holder is a dollar above or a dollar below the allowed secured claim threshold. This reading of *Nobelman* puts an undeserved premium on valuation of residential real property—it assumes a degree of accuracy in the valuation process that is without foundation in reality.")