In re Bruce W. PIERCE and Tammy L. Pierce, Debtors.

Bruce W. Pierce and Tammy L. Pierce, Plaintiffs,

v.

Beneficial Mortgage Co. of Utah, Defendant.

Bankruptcy No. 01–30416. Adversary No. 01–2367.

United States Bankruptcy Court, D. Utah, Central Division.

Feb. 26, 2002.

Lee Rudd, Salt Lake City, UT, for Bruce W. Pierce and Tammy L. Pierce.

Bryan W. Cannon, Sandy, UT, for Citi-Financial.

Michael A. Harrison, Price, UT, for Bill's Home Furnishings.

Kim R. Wilson, Snow, Christensen & Martineau, Salt Lake City, UT, for Kia Financial.

## MEMORANDUM DECISION

WILLIAM T. THURMAN, Bankruptcy Judge.

This matter came before the Court on Bruce W. Pierce and Tammy L. Pierce's (the "Debtors") Verified Motion for Entry of Default Judgment in the adversary proceeding filed November 28, 2001. At a

duly noticed and scheduled hearing held February 13, 2001, where the Debtors were not present but represented by counsel, the Court took the matter under advisement in order to issue a written opinion. No other parties appeared, and no parties, including the subject creditor, Beneficial Mortgage Co. of Utah ("Beneficial"), have responded to the Debtors' complaint or motion. Because the defendant did not answer the complaint within the specified time, the Debtors prepared a proposed Default Judgment to be entered by the Court and served a copy of the Default Judgment and corresponding Default Certificate on Beneficial. However, the Court is aware that this is a matter of first impression in this District and believes it proper to issue a written opinion.

## FACTS

The facts of this matter are straightforward.[1] The Debtors filed for bankruptcy protection under Chapter 13 on July 19, 2001. On the same date as the filing of the petition, the Debtors filed statements and schedules detailing debts and assets, including their residence valued at $66,000.00. In addition, the Debtors claimed a homestead exemption of $40,000.00 relating to that residence. No objections were filed to the listed exemption, and the Debtors' plan was confirmed on February 19, 2002.[2] Listed on the Debtors' schedule of creditors holding secured claims, is a first mortgage holder on the Debtors' residence, Household Finance Services, whose claim, according to the proof of claim it filed, is $77,699.98. Beneficial, a second lien holder, also filed a proof of claim asserting a secured claim in the amount of $24,406.12 and a prepetition arrearage amount of $923.40. This debt is also listed on the Debtors' schedule of creditors holding secured claims.

After Beneficial filed its proof of claim, and before confirmation of their Chapter 13 plan, the Debtors filed a complaint, arguing that Beneficial's trust deed is completely unsecured and should be voided or "stripped" pursuant to 11 U.S.C. § 506(a) and (d) and that the claim filed by Beneficial should be treated as an unsecured claim under the Debtors' Chapter 13 plan. The Debtors argue that because the value of the collateral is only $66,000.00 and the first mortgage holder's claim exceeds that value, any remaining claim holder must be entirely unsecured and, therefore, the lien on the property held by Beneficial may be voided. The Debtors cite authority to support their position, however, there is no direct authority from this District nor from the Tenth Circuit Court of Appeals ("Tenth Circuit"). The Court, therefore, is in the position of ruling on a matter of first impression in the United States Bankruptcy Court for the District of Utah.

## DISCUSSION

### 1. Jurisdiction

The Court has jurisdiction over the parties and subject matter of this adversary proceeding under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (b)(2)(K), and the Court has authority to enter a final order. Venue is proper in the Central Division of the District of Utah under 28 U.S.C. § 1409.

---

1. The facts of the case are drawn from the complaint, which facts are deemed admitted, and from the verified petition and statements and schedules the Debtors filed in their bankruptcy case.

2. For the purposes of this order, the Court finds the value of the residential real property to be $66,000.00 as listed on the Debtors' schedules and supported by an appraisal attached as Exhibit D to the Debtors' complaint.

### 2. Procedural History

■ The Debtors have properly brought this issue before the court in the posture of an adversary proceeding. While a few courts have entertained this issue via motion in a contested matter or through an objection to claim,[3] the Court follows the plain language of Federal Rule of Bankruptcy Procedure 7001(2) which states: "[A] proceeding to determine the validity, priority, or extent of a lien or other interest in property" is an adversary proceeding, which is supported by the majority of courts which have looked at the issue.[4]

### 3. Analysis

■ The issue before the Court is whether a Chapter 13 debtor may "strip off" a wholly unsecured lien on real property despite the language of 11 U.S.C. § 1322(b)(2)[5] prohibiting the modification of the rights of holders of security interests in real property that serve as the debtor's principal residence.[6] The Tenth Circuit has not ruled on this issue in the context of a Chapter 13 case,[7] however, several other Circuits, as well as numerous bankruptcy courts, have ruled on this exact issue, and the Court is guided by these opinions. The difficulty in accomplishing what the Debtors ask is the language of § 1322(b)(2) that allows a debtor's reorganization plan to "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . .*" (emphasis added). This is the situation the Debtors face—Beneficial's claim, if secured at all, is secured only by a security interest in real property that is the Debtors' principal residence. However, under § 506(a):

> An allowed claim of a creditor secured by a lien on property in which the estate

**3.** The Court is aware of several cases whereby liens and security interests have been determined via means other than an adversary proceeding, whether by motion, objection, or plan confirmation. *See e.g., Halverson v. Cameron (In re Mathiason),* 16 F.3d 234, 237–38 (8th Cir.1994); *Trust Corp. of Mont. v. Patterson (In re Copper King Inn, Inc.),* 918 F.2d 1404, 1407 (9th Cir.1990); *In re Hoskins,* 262 B.R. 693, 697 (Bankr.E.D.Mich. 2001); *Jones v. Progressive–Home Fed. Sav. and Loan Ass'n (In re Jones),* 122 B.R. 246, 250 (W.D.Pa.1990); *In re Zobenica,* 109 B.R. 814, 816 (Bankr.W.D.Tenn.1990); *In re Nat'l Oil Co.,* 112 B.R. 1019, 1020 (Bankr.D.Colo. 1990). However, in each of these cases, the matter was actually litigated, with creditors and/or the trustee being present to appropriately argue the merits of the lien. The Court believes the better, and more appropriate practice is to file a complaint and instigate an adversary proceeding as the rules provide.

**4.** *See e.g., Cen–Pen Corp. v. Hanson,* 58 F.3d 89 (4th Cir.1995); *Sun Finance Co., Inc. v. Howard (In re Howard),* 972 F.2d 639 (5th Cir.1992); *Foremost Fin'l Serv. Corp. v. White (In re White),* 908 F.2d 691 (11th Cir.1990); *Wright v. Commercial Credit Corp.,* 178 B.R. 703 (E.D.Va.1995); *Simmons v. Savell (In re Simmons),* 765 F.2d 547 (5th Cir.1985); *In re Vincente,* 257 B.R. 168 (Bankr.E.D.Pa.2001).

**5.** Unless noted otherwise, all further references to the United States Code are to Title 11.

**6.** Section 1322(b)(2) states that "the plan may . . . (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; . . . ."

**7.** The Tenth Circuit has resolved this issue in the context of a Chapter 11 case. In *Wade v. Bradford,* 39 F.3d 1126 (10th Cir.1994), the court determined that " § 506(a) directs that the claim be bifurcated into a secured and an unsecured component," *id.* at 1129, and that the lien can be stripped from the unsecured component in a Chapter 11 case. The court theorized that because a Chapter 11 creditor "may elect to have his claim treated as fully secured," *id.,* by giving up its right to vote on the Chapter 11 reorganization plan, lien stripping must be permitted when the creditor chooses not to give up that right.

has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

This language indicates that when there is no equity in the property, as in the Debtors' residence, then the claim is an unsecured claim and the lien is voidable under § 506(d) [8] and can be "stripped" from the residence.

The United States Supreme Court analyzed the interplay between § 1322(b) and § 506(a) in *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), and determined that in a similar case, it was proper for the debtors to look to § 506(a) "for a judicial valuation of the collateral to determine the status of the ... secured claim." *Id.* at 328, 113 S.Ct. 2106. In *Nobelman*, the

debtors attempted to bifurcate the secured creditor's claim into a secured portion for an amount equal to the remaining value of the collateral and an unsecured portion equal to the remaining amount of the claim. The debtors then attempted to strip the lien from this unsecured portion. The Court declined to allow this bifurcation because it would modify the rights of the secured creditor in contravention of § 1322(b)(2). *See id.* at 332, 113 S.Ct. 2106. The Court, however, did not address the impact of § 506(a) upon § 1322(b)(2) when there is absolutely no value remaining in the collateral securing the claim. This, predictably, has led to a split in authority among the lower courts on the question of whether a lien on a wholly undersecured claim can be stripped.[9]

Since *Nobelman*, a number of Circuit Appeals Courts [10] as well as Bankruptcy Appellate Panels [11] have considered the is-

---

**8.** Section 506(d) in relevant part states: "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void...."

**9.** "A 'wholly undersecured' claim is one for which the supporting collateral holds no remaining value after satisfaction of senior encumbrances." *Bartee v. Tara Colony Homeowners Ass'n (In re Bartee)*, 212 F.3d 277, 280 n. 3 (5th Cir.2000). For purposes of this opinion, the term "unsecured" is equivalent to "wholly undersecured."

**10.** *See e.g., Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122, 126 (2nd Cir.2001) ("We conclude ... that the antimodification exception of Section 1322(b)(2) protects a creditor's rights in a mortgage lien only where the debtor's residence retains enough value ... so that the lien is at least partially secured under Section 506(a)."); *American General Fin., Inc. v. Dickerson (In re Dickerson)*, 222 F.3d 924, 926 (11th Cir.2000) (holding that " § 1322(b)(2) of the Bankruptcy Code protects only those homestead mortgages that are secured by some existing equity in the debtor's principal residence according to

§ 506(a)...."); *Tanner v. FirstPlus Fin., Inc. (In re Tanner)*, 217 F.3d 1357, 1360 (11th Cir.2000) ("Any claim that is wholly unsecured ... would not be protected from modification under section 1322(b)(2)."); *In re Bartee*, 212 F.3d at 295 ("[T]he legislative history and general policy considerations reinforce our holding that the Bankruptcy Code does not permit a wholly undersecured lienholder to rely upon the antimodification protections afforded mortgagees whose secured interest in the homestead is supported by at least some value."); *McDonald v. Master Fin. Inc. (In re McDonald)*, 205 F.3d 606, 615 (3rd Cir.2000), *cert. denied*, 531 U.S. 822, 121 S.Ct. 66, 148 L.Ed.2d 31 (2000) ("[W]e hold that a wholly unsecured mortgage is not subject to the antimodification clause in § 1322(b)(2).").

**11.** *See e.g., Domestic Bank v. Mann (In re Mann)*, 249 B.R. 831, 840 (1st Cir. BAP 2000) ("Pursuant to § 506(a) and § 1322(b)(2), and notwithstanding the antimodification provision in the latter, Chapter 13 plans may void residential real property liens that are wholly unsecured."); *Lam v. Investors Thrift (In re Lam)*, 211 B.R. 36, 41 (9th Cir. BAP 1997) ("The *Nobelman* decision holding that section

sue of whether or not a lien can be stripped when it is completely unsecured under § 506(a) and represent the majority view. Most recently, the Second Circuit in *In re Pond*, 252 F.3d at 123, determined "whether, under 11 U.S.C. § 1322(b)(2), Chapter 13 debtors can void a lien on their residential property if there is insufficient equity in the residence to cover any portion of that lien." The facts in *Pond* are similar to those before this Court. The Chapter 13 debtor's residential property was valued at $69,000.00 and had four liens on the property: $1,505.18 in real property taxes; a first mortgage for $48,995.63; a second mortgage for $20,000.00; and the defendant's mortgage of $10,630.58. All of the liens, excluding the defendant's lien, totaled $70,500.81, an amount in excess of the value of the property and thereby leaving no value to secure defendant's lien. *See id.* at 123–24. The court adopted what is considered the majority view in that "the antimodification exception is triggered only where there is sufficient value in the underlying collateral to cover some portion of a creditor's claim." *Id.* at 125. It determined that because there was no value to secure the defendant's lien, the defendant could not be the holder of a secured claim under § 506(a) as interpreted in *Nobelman*. The court then concluded that the "antimodification exception of Section 1322(b)(2) protects a creditor's rights in a mortgage lien only where the debtor's residence retains enough value— after accounting for other encumbrances that have priority over the lien—so that

the lien is at least partially secured under Section 506(a)." *Id.* at 126.

Although this District has not considered the issue, at least two other bankruptcy courts within the Tenth Circuit have followed the majority position. *In re Lee*, 161 B.R. 271 (Bankr.W.D.Okla.1993), and more recently, *In re German*, 258 B.R. 468 (Bankr.E.D.Okla.2001), both arrived at the same conclusion as the above-cited opinion. *German* particularly relied on the Supreme Court's reference to § 506(a) in determining whether a claim is secured. "If the minority's view [that the antimodification clause applies even if the claim is wholly unsecured] is accepted, there would be no need for § 506(a)." *German*, 258 B.R. at 470.

At least one court within the Tenth Circuit has taken the minority position, however.[12] In *In re Bauler*, 215 B.R. 628 (Bankr.D.N.M.1997), the debtor attempted to strip the second mortgage, relying on the fact that the value of the first mortgage equaled the value of the property, thereby leaving no remaining collateral for the second mortgage holder. The court denied the debtor's motion, agreeing that the second mortgage was completely unsecured. The court reasoned that the plain language of § 1322(b)(2), and a correct reading of *Nobelman*, prohibited a debtor from stripping a claim secured by an interest in real property because Congress would have used the words "secured claim" instead of "claim" if only secured claims could not be modified.[13] *See id.* at

---

1322(b)(2) bars a chapter 13 plan from modifying the rights of holders of claims, secured only by the debtor's principal residence, does not apply to holders of totally unsecured claims.").

**12.** Some courts outside the Tenth Circuit join in the minority view which is that the real focus should be on the existence of the lien, not the value of the collateral, for the pur-

poses of § 1322(b)(2). For a comprehensive breakdown of the courts and commentators that make up the differing positions, see *In re Bartee*, 212 F.3d at 289 nn. 15–18 and *In re Hoskins*, 262 B.R. 693 (Bankr.E.D.Mich. 2001).

**13.** The court in *Bauler* also cited policy considerations in support of its result. It suggested that "too much emphasis would be

 

632–33. The court in *Bauler* held that "a completely unsecured mortgage on a principal residence is nevertheless protected under § 1322(b)(2) from modification." *Id.* at 632.

This Court concurs with the majority view set forth in the above-cited Circuit Court opinions as well as *German* and *Lee*, and holds that under § 506(a), a completely unsecured mortgage holder does not have a secured claim, and is therefore not protected by § 1322(b)(2) and its lien can be stripped. It is the Court's opinion that a thorough reading of *Nobelman*, with the statement that a party should first look to § 506(a) for a "judicial valuation of the collateral to determine the status of the … secured claim," *Nobelman*, 508 U.S. at 328, 113 S.Ct. 2106, precludes any other result. If the claim is unsecured, it cannot be "a claim secured only by a security interest in real property that is the debtor's principal residence," § 1322(b)(2), and "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void...." § 506(d).

## CONCLUSION

The Court determines that because the stated value of the Debtors' residential property does not exceed the first mortgage holder's secured claim of $77,699.68, there is no remaining equity in the property to secure the Beneficial claim and, therefore, the claim is deemed to be entirely unsecured under § 506(a). Because the claim is completely unsecured, Beneficial's lien is void pursuant to § 506(d), and its rights are not protected by the antimodification statute under § 1322(b)(2).

Debtors' counsel is directed to prepare a judgment consistent with this opinion.

placed upon the valuation of the debtor's residence if this Court were to require a § 506(a) valuation to determine whether the mortgage is protected by § 1322(b)(2)." *Bauler*, 215 B.R. at 633. This is in accord with the Eleventh Circuit's statement that "were we to decide this issue on a clean slate, we would not hold so …. [d]enying that same protection to junior mortgages who lack that penny of equity, places too much weight upon the valuation process." *In re Dickerson*, 222 F.3d at 926.