### In re Roberto L. SAMALA and Victoria S. Samala, Debtors.

### No. 13–02–16049 MA.

United States Bankruptcy Court, D. New Mexico.

June 19, 2003.

---

381

Ronald E. Holmes, Albuquerque, NM, for Debtors.

Michael J. Burns, Dallas, TX, for Creditor.

Kelly L. Skehen, Albuquerque, NM, Chapter 13 Trustee.

## MEMORANDUM

MARK B. McFEELEY, Chief Judge.

THIS MATTER is before the Court on the Debtors Motion for Valuation of Collateral Under 11 U.S.C. § 506, Avoidance of Lien of Conseco (Third & Fourth Mortgages) and Objection to Proofs of Claim # 9 and # 14 ("Motion for Valuation"). At the preliminary hearing on the Motion for Valuation, the parties agreed that the Court should rule on the Motion for Valuation based on briefs submitted by counsel. Debtors invite the Court to revisit the issue previously decided by this Court in *In re Bauler*, 215 B.R. 628 (Bankr.D.N.M. 1997), wherein the Court interpreted the United States Supreme Court's decision in *Nobelman v. American Sav. Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) to preclude the modification of a wholly unsecured second mortgage against a debtor's principal residence.

*Nobelman* determined that the anti-modification provision contained in 11 U.S.C. § 1322(b)(2) precludes Chapter 13 debtors from using 11 U.S.C. § 506(a) to bifurcate an undersecured claim secured only by the debtor's principal residence into secured and unsecured portions, and thereby "strip down" the mortgage holder's claim to the value of its collateral. *Nobelman*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). Since *In re Bauler* was decided, a majority of courts, including all circuit courts and two bankruptcy appellate panels that have considered this issue, have concluded that the anti-modification provision contained in 11 U.S.C. § 1322(b)(2) does not apply to wholly unsecured creditors.[1] After re-

1. *See Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220 (9th Cir.2002); *Lane v. Western Interstate Bancorp (In re Lane)*, 280 F.3d 663 (6th Cir.2002); *Pond v. Farm Spe-cialist Realty (In re Pond)*, 252 F.3d 122 (2nd Cir.2001); *Tanner v. FirstPlus Fin., Inc. (In re Tanner)*, 217 F.3d 1357 (11th Cir.2000); *Bartee v. Tara Colony Homeowners Ass'n (In re*

viewing the briefs submitted by counsel and considering the applicable case law, the Court is persuaded that it should now follow the majority position.

## DISCUSSION

The facts before the Court are straightforward. There are four mortgages against the Debtors' principal residence. Creditor Conseco holds three of those mortgages. The Debtors and Conseco stipulate for purposes of the Motion for Valuation that the value of the Debtors' principal residence is $190,000.00. The outstanding balance of the first two mortgages against the property total approximately $206,000.00, leaving no value in the property to which Conseco's third and fourth mortgages can attach.

Debtors assert that the Court should apply 11 U.S.C. § 506(a) [2] to conclude that Conseco's third and fourth mortgages are wholly unsecured, and allow the Debtors to "strip off" those liens in their entirety. Conseco counters that the anti-modification provision contained in 11 U.S.C.

§ 1322(b)(2) [3], as interpreted by the Supreme Court in *Nobelman*, prevents Debtors from "stripping off" its third and fourth mortgages against the Debtors' principal residence.

Under 11 U.S.C. § 506(a), the amount of a secured claim is limited by the value of the collateral. 11 U.S.C. § 506(a). Thus a secured creditor's allowed claim is a secured claim only to the extent of the value of the collateral securing its lien; any amount over and above the value of the collateral is treated as an unsecured claim. 11 U.S.C. § 506(a). Under Chapter 13, a debtor generally can modify the rights of secured claimants; however, a debtor may not modify "a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b).

In *Nobelman*, the Supreme Court addressed the apparent conflict between 11 U.S.C. § 506(a) and 11 U.S.C. § 1322(b)(2) in the context of an undersecured creditor holding a mortgage against the debtor's principal residence. Justice Thomas, in a

---

*Bartee)*, 212 F.3d 277 (5th Cir.2000); *McDonald v. Master Fin. Inc. (In re McDonald)*, 205 F.3d 606 (3rd Cir.2000); *Domestic Bank v. Mann (In re Mann)*, 249 B.R. 831 (1st Cir. BAP 2000); *Lam v. Investors Thrift (In re Lam)*, 211 B.R. 36 (9th Cir. BAP 1997). Two bankruptcy courts within the Tenth Circuit have reached the same conclusion: *Pierce v. Beneficial Mortgage Co. (In re Pierce)*, 282 B.R. 26 (Bankr.D.Utah 2002); *In re German*, 258 B.R. 468 (Bankr.E.D.Okla.2001). *See also; In re Lee*, 161 B.R. 271 (Bankr. W.D.Okla.1993) (decided prior to *Bauler*, but taking the majority position).

2. 11 U.S.C. § 506(a) provides:
    (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may

bee, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest. 11 U.S.C. § 506(a).

3. 11 U.S.C. § 1322(b)(2) provides:
    (b) Subject to subsections (a) and (c) of this section, the plan may—
        (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;
    11 U.S.C. § 1322(b)(2).

unanimous opinion, determined that there is no conflict between the two code sections, and acknowledged that the correct starting place is valuation under 11 U.S.C. § 506(a): "Petitioners were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the Bank's secured claim." *Nobelman,* 508 U.S. at 328, 113 S.Ct. 2106. However, *Nobelman* then focuses on the "rights" of mortgagees to conclude that the protection afforded by 11 U.S.C. § 1322(b) is not limited by the valuation of the collateral under 11 U.S.C. § 506(a). *Id.* at 329–331, 113 S.Ct. 2106. Thus, after *Nobelman,* a creditor whose claim against a debtor's principal residence is only partially secured under 11 U.S.C. § 506(a) nevertheless enjoys complete protection from modification pursuant to 11 U.S.C. § 1322(b).

Because *Nobelman* did not specifically address whether a wholly unsecured mortgagee falls within the anti-modification provision of 11 U.S.C. § 1322(b), a split in authority arose. *See Bartee v. Tara Colony Homeowners Ass'n (In re Bartee),* 212 F.3d 277, 289 nn. 15–18 (5th Cir.2000) (listing the various courts and commentators taking each side of the issue). Those in the minority, including this Court in *In re Bauler,* concluded that the Supreme Court's reasoning in *Nobelman* applies equally to wholly unsecured mortgagees. *Bauler,* 215 B.R. at 632 ("[T]he language used by the Supreme Court . . . indicate[s] that it is the existence of a mortgage lien which determines the application of § 1322 and not the value of the residence subject to the lien.") (citations omitted).

The anti-modification language of 11 U.S.C. § 1322(b) does not contain an express limitation to secured claims; instead, it states "other than a *claim* secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2) (emphasis added); *No-*

*belman,* 508 U.S. at 331, 113 S.Ct. 2106 (examining the language of § 1322(b), noting that "claim" is unqualified in § 1322 and is broadly defined in the code). Given *Nobelman's* focus on the "rights" of claim holders and the language of the statute, courts in the minority conclude that 11 U.S.C. § 1322(b)(2) protects all mortgagees whose claims are secured only by the debtor's principal residence, even when the outstanding balance of the mortgage completely exceeds the value of the property. *See, e.g., In re Bauler,* 215 B.R. 628, 631 (Bankr.D.N.M.1997); *In re Perkins,* 237 B.R. 658 (Bankr.S.D.Ohio 1999); *In re Shandrew,* 210 B.R. 829 (Bankr.E.D.Cal. 1997); *In re Neverla,* 194 B.R. 547 (Bankr. W.D.N.Y.1996). *See also, In re Zimmer,* 313 F.3d 1220, 1226 (9th Cir.2002) (discussing minority position).

Courts in the majority reason that the starting place must be valuation under 11 U.S.C. § 506(a), and that only when a claim has at least some secured portion does § 11 U.S.C. 1322(b)(2) come into play. *See Lane v. Western Interstate Bancorp (In re Lane),* 280 F.3d 663, 668 (6th Cir. 2002) (concluding that "the dividing line drawn by § 1322(b)(2) runs between the lienholder whose security interest in the homestead property has some 'value,' see § 506(a), and the lienholder whose security interest is valueless."); *Pond v. Farm Specialist Realty (In re Pond),* 252 F.3d 122, 125 (2nd Cir.2001) ("[T]he antimodification exception is triggered only where there is sufficient value in the underlying collateral to cover some portion of a creditor's claim.").

Application of 11 U.S.C. § 1322(b)(2) to wholly unsecured mortgages improperly abrogates 11 U.S.C. § 506(a). *See Tanner v. FirstPlus Fin., Inc. (In re Tanner),* 217 F.3d 1357, 1360 (11th Cir.2000)("[T]he only reading of both sections 506(a) and 1322(b)(2) that renders neither a nullity is

one that first requires bankruptcy courts to determine the value of the homestead lender's secured claim under 506(a) ...") (citation omitted); *Lam v. Investors Thrift (In re Lam)*, 211 B.R. 36, 41 (9th Cir. BAP 1997) ("*Nobelman's* reference to section 506(a) is 'meaningless unless some portion of the claim must be secured under § 506(a) analysis before the creditor is entitled to retain the rights it has under state law.'")(quoting *In re Williams*, 161 B.R. 27, 29–30 (Bankr.E.D.Ky.1993)). The most recent bankruptcy court within the Tenth Circuit concurs with this position, holding "that under § 506(a), a completely unsecured mortgage holder does not have a secured claim, and is therefore not protected by § 1322(b)(2) and its lien can be stripped." *Pierce v. Beneficial Mortgage Co. (In re Pierce)*, 282 B.R. 26, 31 (Bankr. D.Utah 2002).

Those courts in the majority counter *Nobelman's* emphasis on "rights" by pointing out that the rights of a wholly unsecured creditor are, in practical terms, valueless. *See In re Bartee*, 212 F.3d 277, 290 (5th Cir.2000) ("'any 'rights' [a wholly undersecured creditor] may assert under *Nobelman* by virtue of its security documents are illusory, hyper-technical, and possibly relevant only in law review articles.'")(quoting *In re Woodhouse*, 172 B.R. 1, 2 (Bankr.R.I.1994)); *Domestic Bank v. Mann (In re Mann)*, 249 B.R. 831, 837 (1st Cir. BAP 2000) ("[W]hen a junior mortgagee's lien is completely unsecured, these purported rights have little legal or practical effect.")(citing *In re Lam*, 211 B.R. at 40).

Policy considerations also support the majority position. One policy consideration for the enactment of 11 U.S.C. § 1322(b)(2) was "to encourage the flow of capital into the home lending market." *Nobelman*, 508 U.S. at 326, 113 S.Ct. 2106 (Stevens, J., concurring). This policy consideration is largely absent in the secondary mortgage market, since most second mortgages are not obtained for the purpose of acquiring the property. *See In re Bartee*, 212 F.3d 277, 293 (5th Cir.2000) ("Because secondary lending is targeted primarily at personal spending, allowing wholly undersecured second mortgages under the umbrella of the antimodification clause would be unlikely to positively impact home building and buying.") (citation omitted); *In re Lam*, 211 B.R. 36, 41 (9th Cir. BAP 1997) ("[B]ecause second mortgagees are not in the business of lending money for home purchases, the same policy reasons for protection of first mortgagees under section 1322(b)(2) do not exist for second mortgagees."). Secondary mortgage lenders should be accountable for the value (or lack thereof) of their security interests. If a second mortgagee is willing to loan against property with no value to secure its mortgage, it should not enjoy the protection afforded by 11 U.S.C. § 1322(b)(2).

Critics of this approach argue that too much emphasis will be placed on valuation, pointing out the disparate and unfair comparison between a creditor with $1.00 worth of equity in the property whose mortgage cannot be modified pursuant to 11 U.S.C. § 1322(b)(2) and a creditor whose mortgage can be avoided simply because the value of the collateral is $1.00 less, leaving the creditor wholly unsecured. *See American Gen. Fin., Inc. v. Dickerson (In re Dickerson)*, 222 F.3d 924, 926 (11th Cir.2000) ("[D]enying that same protection to junior mortgagees who lack that penny of equity, places too much weight upon the valuation process."). However, as pointed out by the Third Circuit, "Bright-line rules that use a seemingly arbitrary cut-off point are common in the law .... line drawing is often required in the law, and, at the boundary, the appearance of unfairness is unavoidable." *McDonald v. Master Fin.,*

*Inc. (In re McDonald),* 205 F.3d 606, 613 (3rd Cir.2000). *See also, In re Lane,* 280 F.3d 663, 669 (6th Cir.2002) (acknowledging that the " 'secured claim/unsecured claim' touchstone may seem arbitrary," but noting that "we live in a world that abounds with arbitrary distinctions."); *In re Lam,* 211 B.R. 36, 41 (9th Cir. BAP 1997) (concluding that this concern is "unfounded.").

Conseco points out that real estate values fluctuate over time, based on market conditions, and that it is possible that the value of the property in the future could rise enough to provide security for its third and fourth mortgages. In addition, as the debt on senior mortgages is paid down, the equity in the property will increase, creating the potential for additional value in the property available to secure its junior mortgages. If 11 U.S.C. § 1322(b)(2) operates to prohibit modification of a wholly unsecured junior mortgage, a future increase in the value of the property could revive the secured status of the third and fourth mortgages. However, as already determined, the Court must first look to 11 U.S.C. § 506(a) to determine whether the creditor is secured before applying 11 U.S.C. § 1322(b)(2). Speculation that value or equity will increase in the future is insufficient reason to apply the anti-modification provisions contained in 11 U.S.C. § 1322(b)(2) to a lien that is currently wholly unsecured under 11 U.S.C. § 506(a).

The Court is persuaded that it should join the majority position and hold that a wholly unsecured creditor, as determined by the valuation provision contained in 11 U.S.C. § 506(a), is not protected by the anti-modification provision of 11 U.S.C. § 1322(b)(2). A debtor may, therefore, "strip off" the lien of a wholly unsecured mortgagee pursuant to 11 U.S.C. § 506(a), even when the creditor's claim is secured only by a security interest in real property that is the debtor's principal residence.

This memorandum constitutes the Court's findings of fact and conclusions of law in accordance with Rule 7052, Federal Rules of Bankruptcy Procedure. An appropriate order will be entered.